UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

KEEVA ROSSOW,

      Plaintiff,

      v.

DAVE JEPPESEN, Director, Idaho
Health and Welfare, in his official
capacity,

      Defendant.

Case No. 1:23-cv-00131-BLW

**MEMORANDUM DECISION
AND ORDER**

## INTRODUCTION

Before the Court is the Idaho Department of Health and Welfare's motion to dismiss (Dkt. 13). For the reasons that follow, the Court will grant the motion in part and deny the motion in part.

## BACKGROUND

In 2021, Keeva Rossow, after giving birth to her child, tested positive for THC. *Comprehensive Safety Assessment*, Def. Ex. B, Dkt. 13-2. The hospital reported the positive test to the Idaho Department of Health and Welfare due to the concern that Ms. Rossow's child may also test positive for THC. *Id*. A child protective services worker investigating the report talked to Ms. Rossow and she

admitted to using marijuana during her pregnancy to alleviate physical and psychological symptoms. *Comprehensive Safety Assessment*, Def. Ex. B, Dkt. 13-2. Based on the positive test and the conversation with Ms. Rossow, the case worker then issued a Comprehensive Safety Report substantiating the report of neglect and assigning her a level two designation under Health & Welfare's regulations. *Police Report*, Def. Ex. A, Dkt. 13-2; *Comprehensive Safety Assessment*, Def. Ex. B, Dkt. 13-2.

When a report of child abuse, neglect, or abandonment is substantiated, the conduct is assigned a level of risk. *See* IDAPA 16.06.01.563. "Prenatal use of any controlled substances. . . except as prescribed by a medical professional" receives a level two designation. *Id.* An individual who receives a level two designation "has been determined to pose a medium to high risk to children and will remain on the Child Protection Central Registry for a minimum of ten (10) years." *Id.* After ten years, the individual may petition to have their name removed. *Id.*

In a letter to Ms. Rossow, the Department informed her that it had substantiated the report and she would be added to the Central Registry for at least 10 years due to the level two designation. *December 2021 Letter*, Def. Ex. C, Dkt. 13-2. Ms. Rossow filed a request for administrative review within the required 28-day window. The report was reviewed by a family and community services

administrator, and Ms. Rossow was notified in a second letter that the administrator upheld the report as substantiated. *February 2022 Letter*, Def. Ex. D, Dkt. 13-2. The second letter informed her that her name was automatically added to the Central Registry, but she could file an appeal, which she did. *Id.* A fair hearing officer conducted a telephonic hearing before, again, upholding the report as substantiated. *Preliminary Order*, Def. Ex. E, Dkt. 13-2.

Ms. Rossow filed a class action complaint against the Department on behalf of herself and others similarly situated alleging violations of the Due Process and Equal Protection Clauses of the Fourteenth Amendment as well as violations of the Idaho Constitution. The Department has moved to dismiss all of Ms. Rossow's claims.

## LEGAL STANDARD

A complaint must plead "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim has facial plausibility when it pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 556. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Id*.

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* "Detailed factual allegations" are not required, but a plaintiff must offer "more than . . . unadorned, the-defendant-unlawfully-harmed-me accusations." *Id.* (cleaned up). That is, a plaintiff must provide specific facts supporting the elements of each claim and must allege facts showing a causal link between the defendant and plaintiff's injury or damages. *See Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978).

The Court must dismiss a cause of action if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). "On a Rule 12(b)(6) motion to dismiss, the court accepts the facts alleged in the complaint as true, and dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged." *Yoshikawa v. Seguirant*, 41 F.4th 1109, 1114 (9th Cir. 2022) (citations, quotations, and alteration omitted). Here, where the facts are largely undisputed, the motion to dismiss turns on whether Ms. Rossow has stated a cognizable legal claim.

## ANALYSIS

### A.    Judicial Notice

The Department asks the Court to take judicial notice of several documents from Ms. Rossow's administrative proceeding. The Court agrees that it is proper to

do so. Under Rule 12(b)(6), the Court may consider matters that are subject to judicial notice. *Mullis v. United States Bank*, 828 F.2d 1385, 1388 (9th Cir. 1897). The Court may take judicial notice "of the records of state agencies and other undisputed matters of public record" without transforming the motion to dismiss into a motion for summary judgment. *Disabled Rights Action Comm. v. Las Vegas Events, Inc.*, 375 F.3d 861, 866 n.1 (9th Cir. 2004). Here, the Court takes notice of several documents that form the record of Ms. Rossow's administrative proceeding: a Coeur d'Alene Police Report (Def. Ex. A, Dkt. 13-2), the Comprehensive Safety Assessment prepared by the Department (Def. Ex. B, Dkt. 13-2), two letters from the Department dated December 20, 2021, and February 10, 2022 (Def. Exs. C & D, Dkt. 13-2), and the Decision and Preliminary Order entered in Ms. Rossow's appeal (Def. Ex. E, Dkt. 13-2).

## B.    Procedural Due Process

Ms. Rossow's procedural due process claim alleges the Department did not provide her with sufficient process before placing her on the Central Registry. A procedural due process claim has two essential elements: (1) a deprivation of a constitutionally protected liberty or property interest, and (2) a denial of adequate procedural protections. *Brewster v. Board of Education of Lynwood Unified School District*, 149 F.3d 971, 982 (9th Cir. 1998). The Court must first determine

whether the plaintiff possessed a constitutionally protected interest. *Brown v. Oregon Department of Corrections*, 751 F.3d 983, 987 (9th Cir. 2014). If not, the inquiry ends. If the plaintiff shows they had a liberty or property interest of which the government deprived them, the Court must then consider, on a case-by-case basis, whether the plaintiff received the process they were due. *Wolff v. McDonnell*, 418 U.S. 539, 560 (1974).

### 1. Liberty Interest

Ms. Rossow claims that the liberty interest at stake is the harm to her "good name, reputation, honor, or integrity." *Response* at 6, Dkt. 19. Such reputational harms are actionable only where the reputational harm "[i]s accompanied by some additional deprivation of liberty or property." *Chaudhry v. Aragón*, 68 F.4th 1161, 1171 (9th Cir. 2023) (quoting *Miller v. California*, 355 F.3d 1172, 1178 (9th Cir. 2004). Under this "stigma-plus test," a plaintiff must show they "suffer[] stigma from governmental action plus alteration or extinguishment of 'a right or status previously recognized by state law.'" *Humphries v. County of Los Angeles*, 554 F.3d 1170, 1185 (9th Cir. 2008) (overruled in part on other grounds) (quoting *Paul v. Davis*, 424 U.S. 693, 711–12 (1976)).

"[B]eing labeled a child abuser by being placed on the [Central Registry] is unquestionably stigmatizing." *Id.* at 1186 (internal quotations omitted). Both the

Ninth Circuit and the Supreme Court have concluded that the inclusion on a list "imputing criminal behavior to an individual" is stigmatizing. *Paul*, 424 US. at 697 (finding stigma where individual was placed on a list of suspected shoplifters); *see also Miller*, 355 F.3d at 1178 (holding "being falsely named as a suspected child abuser on a governmental index is defamatory"); *Fikre v. Federal Bureau of Investigation*, 35 F.4th 762, 776 (9th Cir. 2022) (remanding dismissal of due process claim because plaintiff's "placement on the No Fly List and his alleged presence in the broader Database" may support a stigma-plus claim). Ms. Rossow's placement on the Central Registry thus unquestionably satisfies the first prong of the stigma-plus test.

To satisfy the second, "plus," prong of this test, Ms. Rossow must show that her placement on the Central Registry creates a "tangible burden" on her "ability to obtain a right or status recognized by state law." *Humphries*, 554 F.3d at 1188; *see also Paul*, 424 U.S. at 711. This prong is satisfied where "as a practical matter, the law creates a framework under which agencies reflexively check the stigmatizing listing—whether by internal regulation or custom—prior to conferring a legal right or benefit." *Humphries*, 554 F.3d at 1188.

Placement on the Central Registry creates a tangible burden because certain agencies and employers check the Central Registry "before making employment,

foster care, or adoption decisions." *Complaint* at ¶ 41, Dkt. 1. The Department itself clearly articulated the consequences of being placed on the Central Registry in its first letter to Ms. Rossow: "Individuals who may be subject to a background check conducted through the Department of Health and Welfare for purposes of employment or other non-employment reasons may be impacted by their name being placed on the registry. For example, individuals may be denied a license to provide childcare or foster care and may be denied employment in a group care facility or institution which provides care for children or vulnerable adults." *December 2021 Letter*, Def. Ex. C at 2, Dkt. 13-2. This impact on an individual's access to employment and benefits constitutes a tangible burden. Ms. Rossow's inclusion on the Central Registry "creates an impediment to [her] ability to obtain legal rights." *See Humphries*, 54 F.3d at 1189. As such, Ms. Rossow has plausibly pled the deprivation of a liberty interest.

## 2. Due Process Requirements

Where, as here, a protected liberty interest exists, the Court then uses the three-part balancing test established in *Mathews v. Eldridge*, 424 U.S. 319 (1976), to determine what process is due. *Yagman v. Garcetti*, 852 F.3d 859, 864 (9th Cir. 2017). The *Mathews* test balances three factors: (1) the private interest affected; (2) the risk of erroneous deprivation through the procedures used and the value of

additional safeguards; and (3) the government's interest, including the burdens of additional procedural requirements. *Mathews*, 424 U.S. at 335. Due process is evaluated on a "case-by-case" basis depending on the circumstances presented. *State of California ex rel Lockyer v. F.E.R.C.*, 329 F.3d 700, 711 (9th Cir. 2003).

The private interest is essentially the same liberty interest discussed above: Ms. Rossow has an interest in not being unfairly placed on the Central Registry. *Complaint* at ¶ 41, Dkt. 1. Placement on the registry affects both a reputational interest in not being categorized as a person who abused, neglected, or abandoned a child as well as a concrete harm from the denial of employment or benefits.

In contrast, the Department's interest is in "preventing child abuse" and "the creation or maintenance of a central index. . . is an effective and responsible means" to secure that interest. *Humphries*, 554 F.3d at 1193; *Idaho Dep't of Health & Welfare v. Doe I*, 408 P.3d 81, 92 (Idaho 2017) ("[The] Central Registry was established to assist the Department in protecting children from individuals who have previously abused, neglected or abandoned children."). While the Department has a substantial interest in using the Central Registry to prevent child abuse, that interest is less compelling where, as here, the regulation applies to individuals who consume controlled substances without knowing they are pregnant.

The most important *Mathews* factor is the risk of erroneous deprivation

under existing procedures. *United States v. Quintero*, 995 F.3d 1044, 1055 (9th Cir. 2021). This factor requires asking "after examining the process by which persons are listed on the [Central Registry], what is the risk of someone being erroneously listed?" *Humphries*, 554 F.3d at 1194. Before an individual is placed on the Central Registry, they are provided notice of the risk level, the basis for the decision, and their right to request an administrative review. IDAPA 16.06. 01.564.01. If an individual requests an administrative review, an administrator reviews the decision then notifies the individual of the decision to affirm, reverse, or modify the decision to substantiate the report. IDAPA 16.06.01.564.03. If the decision is affirmed, the individual's name will automatically be placed on the Central Registry once the review is complete. IDAPA 16.06.01.564. At this point, an individual may file an appeal to a fair hearing officer who will conduct a hearing on the appeal. IDAPA 16.05.03.103. At the hearing, the burden of proof is on the individual to show her name should not appear on the registry. IDAPA 16.05.03.132; Def. Ex. E at 4, Dkt. 13-2. "The hearing officer must defer to the Department's interpretation of statutes, rules, regulations or policy unless the hearing officer finds the interpretation to be contrary to statute or an abuse of discretion." IDAPA 16.05.03.131. The fair hearing officer will then issue a written order affirming, reversing, or modifying the Department's initial decision. IDAPA

16.05.03.138.

"Whether or not instances of child abuse have occurred. . . are delicate judgments depending on the credibility of witnesses and assessment of conditions not subject to measurement." *Chalkboard, Inc. v. Brandt*, 902 F.2d 1375, 1381 (1989). The existing procedures risk biased and inaccurate decisions because there is no meaningful opportunity for the individual to challenge the designation before it is made. "The risk of error is considerable when such determinations are made after only hearing one side." *Id.* Here, the individual does not have the opportunity to be heard until the appeal hearing. The appeal, however, provides little in the way of meaningful process. At that point, the individual's name has already been added to the Central Registry. The hearing officer applies a deferential standard, limited evidence is permitted, and the individual bears the burden of proof—though the actual standard of proof is not clear.[1] Prior to the appeal, both the initial determination and administrative review are conducted without an opportunity for

---

[1] The letter informing Ms. Rossow that the administrator affirmed the decision to substantiate the report, suggests that the standard is "more likely than not" and cites to IDAPA 16.06.01.560.01d. *February 2022 Letter*, Def. Ex. D, Dkt. 13-2. That regulation, however, indicates that this "more likely than not" standard is a *separate* basis for concluding child abuse occurred, not the standard of proof. IDAPA 16.06.01.560.01e. The regulation, instead, states that a report will be unsubstantiated where it is "erroneous" or based on "insufficient evidence." IDAPA 16.06.01.560.02.

the individual to present evidence or arguments in her favor. Despite the existence of two levels of review, the actual procedures implemented during the review create a considerable risk of error.

The final step of the *Mathews* analysis is to balance risk of error with the interests of the individual and the government. Here, Ms. Rossow has plausibly pled that additional process is due. She has an important interest in maintaining her reputation and the access to certain benefits it confers. The risk of error from existing procedures is substantial and additional procedures would reduce that risk. The Department has not identified any interest cautioning against additional procedures such as cost, administrative burden, or a particular need to act quickly, as would be the case where a child is actually being abused. *Knudson v. City of Ellensburg*, 832 F.2d 1142, 1149 (9th Cir. 1987) ("necessity of quick action may justify" existing procedures). Indeed, more procedures would not interfere with the Department's interest in protecting children. While there may be circumstances where the process may be more restricted because an expedited process is necessary—such as an ongoing pattern of child abuse—those circumstances do not exist here. Accordingly, the Court will deny the Department's motion.

### C.    Substantive Due Process

Ms. Rossow has also plausibly pled that the Department's regulation violates

substantive due process. Substantive due process is distinct from procedural due process because it "bar[s] certain government actions regardless of the fairness of the procedures used to implement them." *Daniels v. Williams*, 474 U.S. 327, 331 (1986). "Substantive due process cases typically apply strict scrutiny in the case of a fundamental right and rational basis review in all other cases." *Witt v. Dep't of Air Force*, 527 F.3d 806, 817 (9th Cir. 2008). Protected "fundamental" rights are "those personal activities and decisions that this Court has identified as so deeply rooted in our history and traditions, or so fundamental to our concept of constitutionally ordered liberty that they are protected." *United States v. Juvenile Male*, 670 F.3d 999, 1012 (9th Cir. 2012) (quoting *Washington v. Glucksberg*, 521 U.S. 702, 727 (1997)).

Ms. Rossow alleges the Department's rule violates her fundamental rights to procreation, personal autonomy, and privacy under the Fourteenth Amendment. *Complaint* at ¶ 38, Dkt. 1. All of these fundamental rights fall more generally under the fundamental right to privacy. *Parents for Privacy v. Barr*, 949 F.3d 1210, 1222 (9th Cir. 2020). "[The right to privacy] includes 'at least two constitutionally protected privacy interests: the right to control the disclosure of sensitive information and the right to independence [in] making certain kinds of important decisions.'" *Id.* (quoting *Fields v. Palmdale Sch. Dist.*, 427 F.3d 1197,

1207 (9th Cir. 2005)).

Ms. Rossow claims the Department's regulation infringes on the fundamental right to procreation by deterring individuals from having children. *Complaint* at ¶ 42, Dkt. 1. The right to procreation is implicated where a government restricts or interferes with an individual's decision whether or not to have a child. *Eisenstadt v. Baird*, 405 U.S. 438, 453 (1972) ("If the right of privacy means anything, it is the right of the individual. . . to be free from unwarranted governmental intrusion into matters so fundamentally affecting a person as the decision whether to bear or beget a child."); *see generally Griswold v. Connecticut*, 381 U.S. 479 (1965); *Skinner v. Oklahoma*, 316 U.S. 535 (1942).

Ms. Rossow analogizes her claim to *Griswold* and *Eisenstadt*, arguing "[h]er personal decisions during pregnancy about what to ingest or not ingest are no less substantial than her right to use contraceptives and prevent any pregnancy at all, or to instead procreate and carry a pregnancy to term." *Response* at 11, Dkt. 19. The weight of each of these decisions may be substantial; however, that does not necessarily mean a fundamental right is implicated. Restrictions about "what to ingest or not to ingest during pregnancy" do not infringe on the right to procreation in the same way restrictions on contraception do because such restrictions do not limit an individual's ability to freely decide whether or not to bear a child. This is

so even if those restrictions affect an individual's ultimate decision about whether or not to bear a child.

Instead, the fundamental right at issue is better characterized as the right to bodily autonomy and integrity. Viewed most favorably, Ms. Rossow's decision to use marijuana was a medical one. She suffered extreme nausea and other symptoms of pregnancy that could be alleviated through marijuana use. The Ninth Circuit's opinion in *Raich v. Gonzales* is instructive on this point. 500 F.3d 850 (9th Cir. 2007).

In *Raich*, the Ninth Circuit addressed whether "the liberty interest specially protected by the Due Process Clause embraces a right to make a life-shaping decision on a physician's advice to use medical marijuana to preserve bodily integrity, avoid intolerable pain, and preserve life." *Id.* at 864. Though recognizing that "use of medical marijuana for medical purposes" is "gaining traction," the Ninth Circuit concluded "federal law does not recognize a fundamental right to use medical marijuana . . . to alleviate excruciating pain and human suffering." *Id.* at 866. Ms. Rossow's use of marijuana to alleviate symptoms from pregnancy is directly analogous to the plaintiff in *Raich* using it to alleviate suffering from other health conditions. *Id.* at 855. The decision in *Raich* necessarily forecloses Ms. Rossow's argument that a fundamental right is implicated by the Department's

**MEMORANDUM DECISION AND ORDER - 15**

regulation.

Nonetheless, Ms. Rossow's claim may survive a motion to dismiss under rational basis review. A government action will be upheld under rational basis review if it is rationally related to a legitimate purpose. *Stormans, Inc. v. Wiesman*, 794 F.3d 1064, 1084 (9th Cir. 2015). Rational basis review, however, is not "toothless." *Mathews v. De Castro*, 429 U.S. 181, 185 (1976). An action is not rationally related to a legitimate purpose where it is "clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare." *Lebbos v. Judges of Superior Court, Santa Clara County*, 883 F.2d 810, 818 (9th Cir. 1989).

The Department claims the interest here is "protecting life within the womb" from "the dangers of drugs." *Motion* at 13, Dkt. 13; *see Planned Parenthood Great Northwest v. State*, 522 P.3d 1132, 1195 (Idaho 2023) (finding "respect for and preservation of prenatal life" to be a legitimate state interest). Ms. Rossow alleges this interest is not rationally related to the decision to place someone on the Central Registry before a child is born. *Response* at 11, Dkt. 19. The Central Registry was designed to protect children from individuals who previously abused, neglected, or abandoned a child. *Doe I*, 408 P.3d at 92. Indeed, the Child Protective Act, the authorizing statute for the Department's regulation, defines "child" as "an

individual who is under the age of eighteen (18) years." Idaho Code § 16-1602(10).
Ms. Rossow argues that when a person uses controlled substances while pregnant,
there is not yet a child that is the subject of abuse, neglect, or abandonment. She
argues, thus, that it is illogical to place individuals on the Central Registry as a
result of this conduct.

The Department claims that its regulation is sanctioned by Idaho law
recognizing that "preborn children have interests in life, health, and well-being."
Idaho Code § 18-8802(1); *see also Planned Parenthood Great Northwest*, 522 P.3d
at 1195. This provision, however, does not provide that "preborn children" have
the same interests in life, health, and well-being as children who are already born.
Nor does it appear to legally change the definition of child such that all regulations
concerning children now apply with equal force to "preborn children."

There is, indeed, at least a mismatch between the stated goal of protecting
"preborn children" and the use of a system designed to protect children who are
already born. It is plausible, then, that the Department's regulation placing
individuals who prenatally use controlled substances on the Central Registry is not
rationally related to protecting "preborn life" because the Central Registry was
created to protect existing children from those who have abused, neglected, or
abandoned an existing child. As such, the Court will deny the Department's motion

**MEMORANDUM DECISION AND ORDER - 17**

to dismiss Ms. Rossow's substantive due process claim.

## D.   Vagueness / Overbreadth

The Department argues Ms. Rossow has not properly stated an overbreadth or vagueness claim. The Court agrees.

An overbreadth claim exists only where the government action "reaches a substantial amount of constitutionally protected conduct." *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 94 –95 (1982). The Supreme Court has "not recognized an 'overbreadth' doctrine outside the limited context of the First Amendment." *United States v. Salerno*, 481 U.S. 739, 745 (1987). Ms. Rossow does not allege the Department's regulation infringes on any conduct protected by the First Amendment, so her claim is dismissed.

A vagueness challenge may be made either facially or as applied. *Schwartzmiller v. Gardner*, 752 F.2d 1341, 1346 (9th Cir. 1984). "[A] facial vagueness analysis is mutually exclusive from an 'as applied analysis.'" *Id.* A facial challenge is appropriate where "no standard of conduct is specified at all," such that the statue is "impermissibly vague in all of its applications." *Id.* at 1347.

Here, Ms. Rossow has not alleged a facial challenge. The regulation clearly proscribes a standard of conduct: "[P]renatal use of any controlled substance as defined under Section 37-2701(e), Idaho Code." IDAPA 16.06.01.563.02a. Ms.

Rossow claims the regulation is vague because there is "uncertainty surrounding how the law may apply." *Response* at 14, Dkt. 19. This does not constitute a facial challenge because it does not render the application vague "in all of its applications."

Ms. Rossow also does not properly allege an as-applied challenge to the regulation. She questions how the regulation might apply to a woman who used marijuana before knowing she was pregnant or someone who used marijuana legally in Washington before giving birth in Idaho. *Response* at 14, Dkt. 19. As valid as these questions may be, Ms. Rossow does not have standing to raise them. "A plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others." *See Hunt v. Los Angeles*, 638 F.3d 703, 710 (9th Cir. 2011) (quoting *Holder v. Humanitarian Law Project*, 561 U.S. 1, 19 (2010)). Ms. Rossow does not allege she used marijuana before knowing she was pregnant, or that she ingested it legally in Washington. As such, the Court will dismiss Ms. Rossow's vagueness and overbreadth claims.

### E.    Equal Protection

Ms. Rossow claims the Department's regulation violates the Equal Protection Clause because it only applies to women. Under the Equal Protection

Clause, "all persons similarly circumstanced shall be treated alike" by governmental entities. *F.S. Royster Guano Co. v. Virginia*, 253 U.S. 412, 415 (1920). However, "[t]he Constitution does not require things which are different in fact or opinion to be treated in law as though they were the same." *Tigner v. Texas*, 310 U.S. 141, 147 (1940). Equal protection claims are subject to a heightened standard of scrutiny if they involve a suspect or quasi suspect class, such as race, national origin, or gender. *Wright v. Incline Village Gen. Improvement Dist.*, 665 F.3d 1128, 1141 (9th Cir. 2011) The Supreme Court does not consider pregnancy a gender-based categorization. *Toomey v. Clark*, 876 F.2d 1433, 1437 (9th Cir. 1989) ("[U]nder equal protection cases, such classifications are not gender based." (citing *Geduldig v. Aiello*, 417 U.S. 484, 496–97 n.20 (1974))).

Ms. Rossow, however, hinges her equal protection claim on the fact that the Department's regulation treats men and women differently because only women can be pregnant. "When a statute gender-neutral on its face is challenged on the ground that its effects on women are disproportionately adverse, a two-fold inquiry is thus appropriate." *Personal Adm'r of Massachusetts v. Feeny*, 442 U.S. 256, 274 (1979). The first inquiry is whether the classification is indeed neutral. *Id.* "If the classification itself. . . is not based upon gender, the second question is whether the adverse effect reflects invidious gender-based discrimination." *Toomey*, 876 F.2d

at 1437 (citing *Feeney*, 442 U.S. at 274).

To prevail on such a theory, a plaintiff must plead that the regulation has a discriminatory effect and that the government acted with discriminatory intent or purpose. *Id.* (citing *McCleskey v. Kemp*, 481 U.S. 279, 292–93 (1987)). "[I]mpact provides an important starting point, but purposeful discrimination is the condition that offends the Constitution." *Feeny*, 442 U.S. at 274 (internal quotations and citation omitted). The question of intent requires "a sensitive inquiry into such circumstantial and direct evidence of intent as may be available." *Village of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 266 (1977).

Ms. Rossow has plausibly pled discriminatory impact. Under the Department's regulation only women will ever risk being placed on the Central Registry before a child is born. That said, Ms. Rossow does not allege any basis for finding discriminatory intent. Though her response argues that the Department acted with discriminatory intent, her argument focuses on the definition of child rather than facts suggesting the Department intended to discriminate against women. As such, the Complaint does not allege the Department acted with discriminatory intent to treat women, a quasi-suspect class, differently. Therefore, intermediate scrutiny does not apply.

The Equal Protection Clause gives rise to a cause of action even if a plaintiff

does not belong to a protected class. That cause of action, however, requires the plaintiff to make the very difficult showing that there is no rational basis for the inequality created by the enactment. "Under the rational basis test, [a government act] survives an equal protection challenge 'if there is a rational relationship between the disparity of treatment and some legitimate governmental purpose.'" *United States v. Ayala-Bello*, 995 F.3d 710, 715 (9th Cir. 2021) (quoting *Heller v. Doe*, 509 U.S. 312, 320 (1993)).

Here, pregnant people are treated differently from nonpregnant people. Under the Department's regulation only pregnant people will be placed on the Central Registry *before* a child is born. Courts have generally upheld classifications based on pregnancy, even though pregnant people are almost exclusively women, because it "realistically reflects the fact that the sexes are not similarly situated in certain circumstances." *Michael M. v. Superior Court of Sonoma Cty.*, 450 U.S. 464, 469 (1981). That is true here. Only pregnant people can expose a fetus to controlled substances prenatally, so pregnant and nonpregnant people are not similarly situated. [2] As such, Ms. Rossow has not stated

---

[2] The refusal to recognize classifications based on pregnancy as gender-based obscures that the consequences of regulations on pregnancy are felt almost exclusively by women. *See* (Continued)

a claim for equal protection.

### F.     Idaho Constitution

Ms. Rossow claims that the Department's regulation violates "one or more"

of the rights guaranteed by Article I §§ 1 and 21 of the Idaho Constitution.

*Complaint* at ¶ 55. Section 1 guarantees rights that are the state law equivalent of

equal protection under the Fourteenth Amendment under the federal constitution.

*Gomersall v. St. Luke's Reg'l Med. Ctr., Ltd.*, 483 P.3d 365, 375 (2021). The

analysis under the Idaho Constitution for equal protection mirrors the analysis

under the federal constitution. *Id.* ("This Court's equal protection analysis involves

three steps: (1) identifying the classification under attack; (2) identifying the level

of scrutiny under which the classification will be examined; and (3) determining

whether the applicable standard has been satisfied."). Because Ms. Rossow has not

plausibly pled a claim under the federal constitution, so too has she failed to allege

_____

*Coleman v. Court of Appeals v. Maryland*, 566 U.S. 30, 55 (Ginsburg, J., dissenting) ("As an abstract statement, it is simply false that a classification based on pregnancy is gender neutral."). This is all the more true post-*Dobbs*. Under rational basis review, when a state claims an interest in "preborn children" or "fetal life," courts have a limited ability to account for the interests of the pregnant person. Instead, the rights or interests of the fetus, as claimed by the government, will almost always prevail over the interests of the pregnant person. As such, the burden of the additional regulation of pregnant people will fall disproportionately on women. And, under Supreme Court precedent, they will have little recourse in the courts. This is one of the many consequences flowing from the *Dobbs* decision.

a violation of Idaho Constitution under the same theory.[3] As such, her claims under the Idaho Constitution are dismissed.

### G.    Leave to Amend

Regardless of if a party makes a request, "[a] district court should grant leave to amend. . . unless it determines that the pleading could not possibly be cured by the allegation of other facts." *See Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc) (internal quotations omitted). The Court finds that amendment would be futile for the overbreadth and vagueness claims because the facial challenges cannot be cured by the allegation of additional facts. *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1051 (9th Cir. 2008) ("Dismissal without leave to amend is proper if it is clear that the complaint could not be saved by amendment."). The Court finds that for all other claims, amendment would not be futile. As such, the plaintiff is granted leave to amend her equal protection claim as well as her claims under the Idaho Constitution.

### ORDER

**IT IS ORDERED that:**

---

[3] Although Ms. Rossow asserts federal constitutional claims for violation of procedural and substantive due process, she does not appear to assert those claims under the Idaho Constitution. Article I § 13 is Idaho's due process clause and the Complaint does not allege a violation under this clause.

1.      Defendant's Motion to Dismiss (Dkt. 13) is **GRANTED in part and DENIED in part.**

2.      Count II is dismissed without leave to amend.

3.      Counts III and IV are dismissed with leave to amend. Any amended complaint must be filed within 30 days from the date of this decision.  If no amended complaint is filed in a timely manner, the case will proceed only on Count I.

DATED: November 3, 2023

B. Lynn Winmill
U.S. District Court Judge