RICHARD A. HEARN (ISB No. 5574)
JOHN B. INGELSTROM (ISB No. 2659)
HEARN LAW, PLC
151 N. 3rd Ave., Ste. 100
P.O. Box 70
Pocatello, Idaho 83204
Telephone: (208) 904-0004
Facsimile: (208) 904-1816
E-mail: hearn@hearnlawyers.com
         jbi@hearnlawyers.com

EMILY MACMASTER (ISB No. 6449)
MacMaster Law, PLLC
1925 N. Locust Grove Road
Meridian, Idaho 83646
Telephone: (208) 608-2235
E-mail: emily@macmasterlaw.com
         emacmaster07@gmail.com

*Attorneys for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| KEEVA ROSSOW, <br><br> Plaintiff, <br><br> vs. <br><br> DAVE JEPPESEN, Director, Idaho Health and Welfare, in his official capacity, <br><br> Defendant. | Case No. 1:23-cv-00131-BLW <br><br> **CLASS ACTION** <br><br> **VERIFIED FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

Plaintiff KEEVA ROSSOW, on her own behalf and on behalf of a class of all those similarly situated persons described below avers as follows, with knowledge of her own actions and conduct and events occurring in her presence, and upon information and belief as to all other matters:

VERIFIED FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE
RELIEF – Page 1

# I.    NATURE OF THE ACTION

1.    Plaintiff Keeva Rossow and all other similarly situated women (hereafter "*Plaintiffs*") who are either currently pregnant or will in the future be pregnant and therefore subject to cord blood testing and potential placement on the Child Protection Central Registry for 10 years if the cord blood tests positive for THC or any controlled substance as defined under *Idaho Code § 37-2701(e)* or for any other reason pursuant to the provisions of *IDAPA 16.06.01.563.02(a)* in Idaho bring this action against Dave Jeppesen, Director, Idaho Department of Health and Welfare, ("*Defendant*") in his official capacity.

2.    This action seeks to enjoin the Defendant from either placing or maintaining any women in Idaho on the Child Protection Central Registry who are alleged to have used while pregnant controlled substances as defined under *Idaho Code § 37-2701(e)* prenatally pursuant to *IDAPA 16.06.01.563.02(a)*.

3.    Finally, this action seeks a declaratory judgment finding that *IDAPA 16.06.01.563.02(a), i.e.,* which imposes placement on the Child Protection Central Registry for ten years as an administrative sanction*, is unconstitutional* on its face and as applied to

      a.   any woman in Idaho who may decide to use THC prenatally, or

      b.   any woman in Idaho who may decide to use prenatally any other controlled substance as defined under *Idaho Code § 37-2701(e)*.

# II.    JURISDICTION AND VENUE

4.    This action asserts claims for the violations of constitutional rights under *42 U.S.C. § 1983*. Accordingly, this Court has jurisdiction over this action pursuant to *28 U.S.C. §§ 1331 and 1343,* with supplemental jurisdiction over state law claims alleged herein pursuant to *28 U.S.C. § 1367*. Declaratory relief is authorized by *28 U.S.C. §§ 2201 and 2202*.

5.     Venue is proper in this District pursuant to *28 U.S.C. § 1391* because the Defendant resides in the District of Idaho.

### III.     PARTIES

6.     Plaintiff Keeva Rossow ("*Plaintiff Rossow*") is a woman whose name was placed on the Child Protection Central Registry by the Idaho Department of Health & Welfare, a department of the State of Idaho, in December 2021 pursuant to *IDAPA 16.06.01.563.02(a)*.

7.     Defendant is the Director of Idaho Department of Health and Welfare and is being sued in his official capacity only.

### IV.     STATEMENT OF FACTS

**A.     Idaho's Child Protection Central Registry.**

8.     Pregnant women residing in Idaho are subject to being placed on the Child Protection Central Registry by Idaho Department of Health and Welfare for ten years pursuant to *IDAPA 16.06.01.563.02(a)* if such women prenatally used any controlled substances as defined under *Idaho Code § 37-2701(e)* except as prescribed by a medical professional.

9.     No violation of Idaho's criminal statutes need be proven prior to imposition of a ten-year administrative sanction pursuant to *IDAPA 16.06.01.563.02(a).*

10.     Pursuant to *Section 37-2701(e)*, "controlled substance" means a drug, substance or immediate precursor in schedules I through VI of article II of chapter 27, title 37, of the Idaho Code.

11.     *Section 37-2702(a)* states that "the board [defined as the Idaho Board of Pharmacy] shall administer the regulatory provisions of this act and may add substances to or delete or reschedule all substances enumerated in the schedules in section *37-2705, 37-2707, 37-2709, 37-*

*2711*, or *37-2713*, Idaho Code, pursuant to the procedures of chapter 52, title 67, Idaho Code. In making a determination regarding a substance, the board shall consider the following:

(1) The actual or relative potential for abuse;
(2) The scientific evidence of its pharmacological effect, if known;
(3) The state of current scientific knowledge regarding the substance;
(4) The history and current pattern of abuse;
(5) The scope, duration, and significance of abuse;
(6) The risk to the public health;
(7) The potential of the substance to produce psychic or physiological dependence liability; and
(8) Whether the substance is an immediate precursor of a substance already controlled under this article.

12. Risk to the fetus of the prenatal use of a substance is not listed as one of the enumerated eight factors to be considered by the Board of Pharmacy in determining what substances should be placed in Schedules I through VI.

13. Tetrahydrocannabinol ("*THC*") is a "controlled substance" in Idaho. Neither cigarettes nor alcohol are controlled substances in Idaho.

14. Plaintiff Rossow used THC during her pregnancy to treat her intractable and severe nausea and vomiting which she perceived as being associated with her pregnancy.

15. Hyperemesis Gravidarum ("*HG*") is an extreme form of morning sickness, often associated with a first pregnancy, which can lead to hospitalization.

16. Throughout history, marijuana treatments have been used in obstetric and gynecologic practice as a safe and efficacious medicine to treat a range of conditions including dysmenorrhea, dysuria, menopausal symptoms and HG.

17. Studies show that marijuana is an effective antiemetic, meaning a drug that is effective against vomiting and diarrhea.

18. Many pregnant women use marijuana to address the symptoms of HG as well as the less severe pregnancy symptoms including headaches, nausea, and loss of appetite.

19. In a peer reviewed study to determine if marijuana benefited pregnant people, ninety-two percent of patients reported marijuana as "effective" or "extremely effective" for managing nausea and vomiting.

20. According to *IDAPA 16.06.01.563.02(a)*, "[n]ames of individuals for whom an incident of abuse, neglect, or abandonment has been substantiated for any of the following will be given the designation of Level Two.

      a. Prenatal use of any controlled substance as defined under Section 37-2701(e), Idaho Code, except as prescribed by a medical professional . . . ."

21. Also, according to *IDAPA 16.06.01.563.02*, "[a]n individual with a Level Two designation has been determined to pose a medium to high risk to children and remain on the Child Protection Central Registry for a minimum of ten (10) years."

22. In a letter to Plaintiff Rossow dated December 20, 2021, Kayla Ellis, Child Welfare Social Worker 3, stated that Plaintiff Rossow had been placed on the Child Protection Central Registry as a Level Two.

23. In the letter to Plaintiff Rossow dated December 20, 2021, Kayla Ellis, Child Welfare Social Worker 3, stated that "[i]ndividuals who may be subject to a background check conducted through the Department of Health and Welfare for purposes of employment or other non-employment reasons may be impacted by their name being placed on the registry. For example, individuals may be denied a license to provide childcare or foster care and may be denied employment in a group care facility or institution which provides care for children or vulnerable adults."

24. Plaintiff Rossow's daughter was born on December 8, 2021, and is currently doing well without any known medical issues.

**B.     Idaho's Historical Efforts to Control Women During Pregnancy.**

25.     Controlling the conduct of women was one purpose to use Idaho law to "intervene into the pregnancy of women suspected of using illegal drugs" in or about 1991, when Idaho's Governor requested an Attorney General Opinion.

26.     The Question Presented in A.G. Opinion No. 91-1 was as follows,

> Does the State of Idaho have the authority to intervene into the pregnancy of a woman suspected of using illegal drugs in an effort to control the woman's conduct and protect the health of the fetus?

Op. Atty Gen. 91-1, Official Opinions of the Attorney General for 1991, p. 5 (1991).

27.     The State of Idaho was considering "interven[ing] into the pregnancy of women suspected of using illegal drugs": for two reasons: (1) "to control the woman's conduct" and (2) to "protect the health of the fetus". *Id.*

28.     The Attorney General opined that, in known cases of prenatal drug abuse, the State would have a compelling interest in protecting potential human life that would override the interest of the woman and "permit some degree of state intervention." *Id.* However, the Attorney General concluded that:

> Idaho's Child Protective Act, *Idaho Code § 16-1601, et seq.*, presently would not permit the state to intervene in the case of gestational drug abuse in order to protect the fetus. *Idaho Code § 16-1602(e)* defines a child as "an individual who is under the age of eighteen (18) years." This definition does not extend to the unborn. . . . .
>
> [T]he present Idaho Child Protective Act does not provide protection for the unborn. An action brought under the Act on behalf of a fetus would in all likelihood be dismissed for lack of jurisdiction, The Act could be amended, as done in New Jersey, to provide for the unborn. However, the procedural structure of the Child Protective Act as presently structured comes into play only after the birth of the child and would require significant amendments to cover this situation.

*Id.,* pp 5 and 7.

29.     Because Idaho's executive branch was on notice as far back as 1991 that *Idaho Code § 16-1601, et seq.* provides <u>no</u> protection for fetuses, Defendant's actions since taken, citing *Idaho Code § 16-1601, et seq.,* are a pretext to control the prenatal conduct of women without statutory authority.

30.     Unable to achieve the primary goal of controlling the conduct of pregnant women using Idaho's Child Protective Act, *i.e.*, *Idaho Code § 16-1601, et seq.,* Idaho Legislators sought to achieve the same goal in both 2005 and 2006 by proposing to add a new section, *37-2732D*, to Idaho's statutes related to controlled substances, *i.e., 37-2732.*

31.     Senate Bill 1218 introduced in 2005 and Senate Bill 1337 introduced in 2006 both sought to redefine the term "child" as used in a new statute, *§ 37-2732D,* to include "embryos" and "fetuses".

32.     If enacted into law, Senate Bill 1218 or Senate Bill 1337 would have made it a felony for any woman to knowingly use, consume, inhale, or otherwise introduce a controlled substance into her body while pregnant.

33.     Because Senate Bill 1218 and Senate Bill 1337 each would make it a felony for any pregnant woman to knowingly use, consume, inhale, or otherwise introduce a controlled substance into her body—simply because she is pregnant—there was no statutory need to also redefine the term "child" to include embryos and fetuses. Rather, the proposed change to the definition of "child" portrayed pregnant women as already "mothers" of as yet unborn "children" during the prenatal period without similarly treating men as already "fathers" during that same prenatal period.

34.     Senate Bill 1218, introduced in 2005, stated in part:

An act relating to controlled substances; amending Chapter 27, Title 37, Idaho code, by the addition of a new section 37-2732D, Idaho Code, to prohibit certain conduct relating to the use of controlled substances endangering children. . . .

37-2732D. Use of Controlled Substances Endangering Children. (1) Except as authorized by this chapter, it is unlawful:

(a) For any person to knowingly introduce a controlled substance into the body of a female that person knows to be pregnant;

(b) For any female who knows she is pregnant to knowingly use, consume, inhale, or otherwise introduce a controlled substance into her body;

(c) For any person to knowingly permit or intentionally cause a child to ingest, inhale or otherwise introduce into the child's body a controlled substance. . . . .

(2) For purposes of subsection 1(b) of this section, it shall be prima facie evidence that a pregnant female has consumed a controlled substance if during pregnancy the female tests positive for the presence of controlled substances or if the female or her newborn child tests positive for the presence of controlled substance upon the birth of the newborn child. . . .

(4) The provisions of this section shall not apply when the controlled substance in question is legally used, consumed, inhaled, ingested or otherwise introduced into the body of a pregnant female or child pursuant to a valid prescription.

(5) As used in this section:
(a) "Child" means any individual under the age of eighteen (18) years and includes embryos and fetuses, as those terms are used in section 18-907, Idaho Code; and
(b) "Controlled substances" means controlled substances defined in schedules I and II in this chapter.

(6) A violation of this section is a felony. . . .

35.     According to the Statement of Purpose for Senate Bill 1218, this bill was intended to address users of illegal drugs who, by their conduct, knowingly permit or intentionally cause a "child" to ingest an illegal controlled substance.

36.     Senate Bill 1218 was introduced in a Senate committee but did not make it to the floor of the Senate for a vote in 2005, much less become Idaho law.

37.     Senate Bill 1337, introduced in 2006, included text that was nearly identical to the text of Senate Bill 1218 the prior year. Senate Bill 1337, like Senate

Bill 1218, would have made it a felony for a pregnant woman to knowingly use, consume, inhale, or otherwise introduce a controlled substance into her body, and would have changed the definition of a "child" for this purpose to include embryos and fetuses. Senate Bill 1337 also shared a similar Statement of Purpose with Senate Bill 1218.

38.     Senate Bill 1337 passed the Senate in 2006, but the bill did not make it to the floor of the House for a vote in 2006, much less become Idaho law.

39.     By adding "fetuses" and "embryos" to the definition of "child", Senate Bill 1218 or Senate Bill No. 1337, if enacted, would have allowed Idaho to criminally prosecute the "child's" mother for her conduct during the prenatal period but not the "child's" father during that same period.

40.     While neither Senate Bill 1218 and Senate Bill 1337 were enacted, they provide historical context for the next steps taken by the Idaho Department of Health and Welfare to control "mothers" only, and not "fathers," during the prenatal period.

41.     Idaho Administrative Code 16.06.01.563.02a was adopted in 2007 to state:

**Child Protection Level Two**. An individual with a Level Two designation has been determined to pose a medium to high risk to children and will remain on the child Protection Central registry for a minimum of ten (10) years. . . . Names of individuals for whom an incident of abuse, abandonment, or neglect has been substantiated for any of the following will be given the designation Level Two.

a.     Prenatal use of any controlled substance as defined under Section 37-2701(e), Idaho code, except as prescribed by a doctor.

42.     *IDAPA 16.06.01.561* asserts that *IDAPA 16.06.01.563.02(a)* is promulgated under the Child Protective Act, at *Idaho Code § 16-1601*, *et seq.*

43.     From 2008 through 2023, Idaho Administrative Code 16.06.01.563.02a continues in the administrative code unchanged and Defendant continues to enforce the rule against women, labeling them as "child" abusers.

## C.     The Rule's Facial Distinction Between Mothers And Fathers

44.     "Statutory classifications that distinguish between males and females are 'subject to scrutiny under the Equal Protection Clause.'" *Craig v. Boren,* 429 U.S. 190, 197, 97 S. Ct. 451 (1976). *IDAPA 16.06.01.563.02(a)* is a facial sex classification that treats men and women differently.

45.     Also, even in circumstances where "pregnancy" may not be considered a gender-based classification, "motherhood" is a facial gender-based classification.

46.     *IDAPA 16.06.01.563.02(a)* is not gender neutral on its face as it is only applied to women as the *mother* of a "child" prior to birth.

47.     *IDAPA 16.06.01.563.02(a)* is not gender neutral on its face as it cannot be applied to men as the *father* of a child prior to birth.

48.     In relation to their children, mothers and fathers are similarly situated.

49.     In *Bostock v. Clayton Cty.,* the U.S. Supreme Court's majority opinion cited "motherhood discrimination" in holding that discrimination on the basis of homosexuality or transgender status is also unlawful sex discrimination. *Bostock,* ___ U.S. ___, 140 S. Ct. 1731, 1744, 1747 (2020). The dissent agreed: "[M]otherhood, by definition, is a condition that can be experienced only by women, so a policy that distinguishes between motherhood and parenthood is necessarily a policy that draws a sex-based distinction." *Id.,* ___ U.S. ___, 140 S. Ct. at 1775 (Alito, S. dissenting).

50.     *In Sessions v. Morales-Santana,* an 8 – 0 decision, the U.S. Supreme Court expressly addressed discriminatory treatment between "mothers" and "fathers". *Sessions,* 582 U.S. 47, 51, 137 S.Ct. 1678 (2017). *Sessions* held that *8 U.S.C.S. §§ 1401* and *1409(a)* and *(c)*—by imposing a gender-based differential between a mother and a father

for acquisition of U.S. citizenship by their child born abroad—violated the equal protection provisions of the *Fifth Amendment*. "We hold that the gender line Congress drew is incompatible with the requirement that the Government accord to all persons 'the equal protection of the laws.'" *Id.,* 82 U.S. at 52, 137 S.Ct. 1678.

51.    The *Sessions* Court reached this holding by applying heightened scrutiny because the statutory classification distinguished mothers from fathers. "The defender of legislation that differentiates on the basis of gender must show 'at least that the [challenged] classification serves important governmental objectives and that the discriminatory means employed are substantially related to the achievement of those objectives.'" *Id.* at 59 (citing *United States v. Virginia*, 518 U.S. 515, 533, 116 S. Ct. 2264 (1996) [quoting *Mississippi Univ. for Women v. Hogan*, 458 U. S. 718, 724, 102 S. Ct. 3331 (1982) (alteration in original)]).

52.    Citing criticism of legal "asymmetry" shaped by "maternalist norms," *Sessions* warns: "It will not do to 'hypothesiz[e] or inven[t]' governmental purposes for gender classifications 'post hoc in response to litigation.'" *Sessions,* 82 U.S. at 70, 137 S.Ct. 1678  (citing *Virginia*, 518 U.S. at 533, 535-536, 116 S. Ct. 2264). Rather, as *United States v. Virginia* holds: "The justification must be genuine, not hypothesized or invented post hoc in response to litigation. And it must not rely on overbroad generalizations about the different talents, capacities, or preferences of males and females." *United States v. Virginia,* 518 U.S. at 533, 116 S. Ct. 2264.

53.    Applying heightened scrutiny, *Sessions* found no "exceedingly persuasive justification" for the *§ 1409(c)* exception for unwed U.S.-citizen mothers to longer physical-presence requirements of  *§§ 1401* and *1409(a)*. *Sessions,* 82 U.S. at 59, 137

S.Ct. 1678. The Court reasoned that *§ 1409(c)* was grounded "in the obsolescing view that unwed fathers are invariably less qualified and entitled than mothers to take responsibility for nonmarital children". *Id.* at 62-63.

54. "Laws according or denying benefits in reliance on '[s]tereotypes about women's domestic roles', the Court has observed, may 'creat[e] a self-fulfilling cycle of discrimination that force[s] women to continue to assume the role of primary family caregiver.'" *Id.,* 82 U.S. at 63. Under *Sessions,* no important governmental interest is served by laws grounded in stereotypical portrayals of men and women in relation to parenthood.

55. By deeming embryos and fetuses to be "children" for purposes of *IDAPA 16.06.01.563.02(a)*, the Idaho Department of Health and Welfare has redefined the prenatal period as being the first months of a woman's motherhood and, accordingly, the first months of parenthood for women and men.

56. *IDAPA 16.06.01.563.02(a)* treats a pregnant woman carrying an embryo or fetus as a mother of a "child" but does not treat the embryo or fetus' father the same as it treats the mother. Being the mother rather than the father of a "child" during the prenatal period is a but-for cause for placement on the Child Protection Central Registry.

57. In *Sessions,* Justice Ginsberg wrote: "History reveals what lurks behind *§ 1409*." *Sessions,* 82 U.S. at 59, 137 S.Ct. 1678. Under *Sessions,* laws granting or denying benefits on the basis of the sex of a parent "differentiate on the basis of gender therefore attract heightened scrutiny under the Constitution's equal protection guarantee":

> "Laws granting or denying benefits "on the basis of the sex of the qualifying parent," our post-1970 decisions affirm, differentiate on the basis of gender, and therefore attract heightened review under the Constitution's equal protection guarantee. *Califano v. Westcott*, 443 U. S. 76, 84, 99 S. Ct. 2655, 61 L. Ed. 2d 382

(1979); *see id*., at 88-89, 99 S. Ct. 2655, 61 L. Ed. 2d 382 (holding
unconstitutional provision of unemployed-parent benefits exclusively to fathers).
*Accord Califano v. Goldfarb*, 430 U. S. 199, 206-207, 97 S. Ct. 1021, 51 L. Ed. 2d
270 (1977) (*plurality opinion*) (holding unconstitutional a Social Security
classification that denied widowers survivors' benefits available to widows);
*Weinberger v. Wiesenfeld*, 420 U. S. 636, 648-653, 95 S. Ct. 1225, 43 L. Ed. 2d
514 (1975) (holding unconstitutional a Social Security classification that excluded
fathers from receipt of child-in-care benefits available to mothers); *Frontiero v.
Richardson*, 411 U. S. 677, 688-691, 93 S. Ct. 1764, 36 L. Ed. 2d 583 (1973)
(plurality opinion) (holding unconstitutional exclusion of married female officers
in the military from benefits automatically accorded married male officers); cf.
*Reed v. Reed*, 404 U. S. 71, 74, 76-77, 92 S. Ct. 251, 30 L. Ed. 2d 225 (1971)
(holding unconstitutional a probate-code preference for a father over a mother as
administrator of a deceased child's estate).

*Sessions*, 582 U.S. at 58, 137 S.Ct. 1678.

58.     Prescribing one rule for mothers, another for fathers, *IDAPA 16.06.01.563.02(a)* is

of the same genre as the classifications declared unconstitutional in *Sessions*. Being listed by

Defendant on the Child Protection Central Registry pursuant to *IDAPA 16.06.01.563.02(a)* labels

parents who are women to be child abusers—but not parents who are men.

59.     Since 1991, more than thirty years ago, the State's tacit purpose has been

to control the woman's conduct during pregnancy. *See* A.G. Opinion No. 91-1, p. 1.

60.     *IDAPA 16.06.01.563.02(a)*'s targeting of alleged drug use by a "child's

mother" during the prenatal period while turning a blind eye towards that same "child's

father" is anachronistic. Like *§ 1409(c)* in *Sessions, IDAPA 16.06.01.563.02(a)* is

grounded in obsolescing views that emulate a stereotype that only the woman, and not

man, is responsible for the viability of their fetus, the "child," and therefore that only the

woman, and not the man, must bear ***all*** the burdens of the fetus' well-being prenatally.

61.     Because *IDAPA 16.06.01.563.02(a)* penalizes only the "mother" and not

the "father" of a "child," the rule facially discriminates based upon a facial classification

of gender.

**D.  The Rule's Disparate Impact and Discriminatory Purpose.**

62.     Even "[w]hen a neutral law has a disparate impact upon a group that has

historically been the victim of discrimination, an unconstitutional purpose may still be at work."

*Personal Adm'r of Massachusetts v. Feeny*, 442 U.S. 256, 273, 99 S. Ct. 2282, 2293 (1979).

"When a statute gender-neutral on its face is challenged on the ground that its effects on women

are disproportionally adverse, a twofold inquiry is thus appropriate." *Id.* at 274. "The first inquiry

is whether the classification is indeed neutral in the sense that it is not gender based." *Id.* "If the

classification itself, covert or overt, is not based upon gender, the second question is whether the

adverse effect reflects invidious gender-based discrimination." *Id.*

63.     Facial neutrality does not end the analysis if it can be shown that "distinctions

involving pregnancy are mere pretexts designed to effect an invidious discrimination against the

members of one sex or the other." *Nashville Gas Co. v. Satty*, 434 U.S. 136, 145, 98 S. Ct. 347,

366 (1977) (quoting *General Electric Co. v. Gilbert*, 429 U.S. 125, 135, 97 S. Ct. 401 (1976)).

64.     "The distinction between benefits and burdens is more than one of semantics."

*Id.* at 142.

65.     While the "[p]hysical differences between men and women, however, are

enduring," these differences should "remain cause for celebration, but not for denigration of the

members of either sex or for artificial constraints on an individual's opportunity." *United States

v. Virginia,* 518 U.S. at 533, 116 S. Ct. 2264.  "The essential question, therefore, is not merely

whether pregnancy is made a classifying factor, but whether discrimination has occurred." *De

Laurier v. San Diego Unified School Dist.*, 588 F.2d 674, 677 (9th Cir. 1978).

66.     The question of discriminatory intent requires "a sensitive inquiry into such

circumstantial and direct evidence of intent as may be available." *Village of Arlington Heights v.*

*Metro. Hous. Dev. Corp.*, 429 U.S. 252, 266, 97 S. Ct. 555 (1977). "The impact of the official

action -- whether it "bears more heavily on one race [i.e., a suspect or quasi-suspect class] than

another, . . . may provide an important starting point." *Id.* (citation omitted). "The historical

background of the decision is one evidentiary source, particularly if it reveals a series of official

actions taken for invidious purposes." *Id.* at 267. "The specific sequence of events leading up to

the challenged decision also may shed some light on the decisionmaker's purposes." *Id.*

"Departures from the normal procedural sequence also might afford evidence that improper

purposes are playing a role. Substantive departures too may be relevant." *Id.* "The legislative or

administrative history may be highly relevant." *Id.* at 268.

      67.     Determining the validity of a gender-based classification "must be applied free of

fixed notions concerning the roles and abilities of males and females. Care must be taken in

ascertaining whether the statutory objective itself reflects archaic and stereotypic notions." *Miss.*

*Univ. for Women v. Hogan,* 458 U.S. 718, 724-725, 102 S. Ct. 3331, 3336 (1982).

      68.     "There can be no doubt that our Nation has had a long and unfortunate history of

sex discrimination. Traditionally, such discrimination was rationalized by an attitude of

'romantic paternalism' which, in practical effect, put women, not on a pedestal, but in a cage."

*Fontiero v. Richardson,* 411 U.S. 677, 684, 93 S. Ct. 1764 (1973). *Frontiero* highlighted the

historical legal discrimination against women that is firmly rooted in our national consciousness,

e.g.: "The paramount destiny and mission of woman are to fulfil the noble and benign offices of

wife and mother. This is the law of the Creator." *Id.* (quoting *Bradwell v. State*, 16 Wall. 130,

141 (1873) (Bradley, J., concurring)).

      69.     More than 40 years later in 2017, so too the *Sessions* Court cautioned that there

are "habitual, but now untenable, assumptions" in our historical laws about parenthood, e.g.,: "In

marriage, husband is dominant, wife subordinate; unwed mother is the natural and sole guardian of a nonmarital child". *Sessions,* 82 U.S. at 59, 137 S.Ct. 1678.

70.     In *Nev. Dep't of Human Res. v. Hibbs*, the U.S. Supreme Court addressed the impacts of gender-stereotyping, in regard to parenting leaves, upon women's employment opportunities. "Historically, denial or curtailment of women's employment opportunities has been traceable directly to the pervasive presumption that women are **mothers** first, and workers second." *Hibbs,* 538 U.S. 721, 736, 123 S. Ct. 1972, 1982 (2003) (quoting Joint Hearing 100 on the Family Medical Leave Act [emphasis added]).

71.     "This prevailing ideology about women's roles has in turn justified discrimination against women when they are mothers or mothers-to-be." *Id.* "Stereotypes about women's domestic roles are reinforced by parallel stereotypes presuming a lack of domestic responsibilities for men." *Id.* Like *Sessions, Hibbs* recognizes the burdens that outdated stereotypes about parenting impose upon women while excusing men from such burdens.

72.     *IDAPA 16.06.01.563.02(a)* imposes a disparate impact upon women, because only women and not men are placed on the Child Protection Central Registry pursuant to *IDAPA 16.06.01.563.02(a)*.

73.     The disparate impact imposed by *IDAPA 16.06.01.563.02(a)* limits a woman's access to employment opportunities while listed on the Child Protection Central Registry, for a minimum ten years, including, but not limited to, for one or more of the following reasons:

      a.     *IDAPA 16.05.06.001.03* requires that criminal history and background checks performed by the Idaho Department of Health and Welfare include checking any "state or federal Child Protection Registry";

b.     Idaho law imposes statutory requirements for background checks of certain types of employees and/or volunteers.  For example, *Idaho Code § 33-130* requires school district employees, applicants for certificates, substitute staff, and individuals having unsupervised contact with students in a K-12 setting to undergo a criminal history check;

c.     *IDAPA 16.05.06.100* and *IDAPA 16.05.06.101* identify a list of individuals who are required by law to undergo background checks, as well as Department employees, contractors, and volunteers who also must be background checked; and/or

d.     *IDAPA 16.05.06.125* requires the Idaho Department of Health and Welfare to provide the results of Child Protection Central Registry checks to "any agency that requires it to comply with applicable federal, state, or local law."

74.     *IDAPA 16.06.01.563.02(a)* is based upon stereotyped expectations of "mothers-to-be" or, as the IDAPA rule considers them, "mothers" of unborn "children" and burdens women who do not conform to these stereotypes. Inconsistencies reveal that *IDAPA 16.06.01.563.02(a)* is a pretext for purposeful discrimination against women, including one or more of the following.

75.     *IDAPA 16.0.01.561* states that the "Child Protection Central Registry was established under the authority of Section 16-1629(3), Idaho Code," although *Idaho Code § 16-1629(3)* says nothing about penalizing women for a decade following pregnancy.  The lack of express statutory authority for the substantial burden that the rule imposes indicates it is a pretext for a discriminatory motive against women who don't live up to stereotypes of "motherhood."

76.     Also, the definition of a "child" in *Idaho Code § 16-1602(10)* is flatly inconsistent with penalizing a woman for alleged harm to a fetus. On the face of this inconsistency, the promulgation and enforcement of *IDAPA 16.06.01.563.02(a)* are a pretext for sex discrimination.

77.     Also, *IDAPA 16.06.01.563.02(a)* penalizes women only by listing them on the Child Protection Central Registry for a minimum of ten years, even when there is no criminal conviction, or even a prosecution, for alleged drug use or child abuse. The rule's end-run around Idaho's criminal statutes to penalize women but not men is a pretext for sex discrimination.

78.     Also, *IDAPA 16.06.01.563.02(a)* prohibits the prenatal use of controlled substances but does not prohibit the prenatal use of drugs potentially harmful to the fetus, such as alcohol or cigarette smoking. This too-loose fit between harms and the rule's scope of assertedly protective regulation indicates that *IDAPA 16.06.01.563.02(a)* is a pretext for discrimination.

79.     Also, the penalty under *IDAPA 16.06.01.563.02(a)*—i.e., a determination that a woman "pose[s] a medium to high risk to children" <u>in the future</u> because she used a controlled substance <u>in the past</u> during pregnancy—does not remedy any alleged harm to the fetus or prevent any harm to that child once born. The mismatch between alleged harm and punishment is a pretext for shaming woman as "child abusers" listed on the Child Protection Central Registry.

80.     Also, *IDAPA 16.06.01.563.02(a)* mentions no less severe options for remedial measures, such as education or support for mothers-to-be or new mothers, rehabilitation for drug addiction, or family support measures after childbirth. *See Karnoski v. Trump,* 926 F.3d (9th Cir. 2019) (requiring consideration in an equal protection challenge of whether "a less intrusive means is unlikely to achieve substantially the government's interest"). The IDAPA rule is a pretext for subjecting women as "mothers", but not men as "fathers", to a demeaning and stigmatizing ten-year listing on the Child Protection Central Registry.

81.     Despite the IDAPA rule's asserted purpose to protect children, childbirth and pregnancy in the State of Idaho are, alarmingly, becoming increasingly dangerous for various other reasons, in spite of Defendant's insistence on enforcing *IDAPA 16.06.01.563.02(a)*.

82. A recent report indicates that Idaho's infant and maternal mortality rates are increasing. In 2022, 1 in 5 women in Idaho reportedly did not receive any prenatal care in the first trimester of pregnancy. In 2021, 3 in 10 pregnant women in Idaho reportedly lacked health insurance prior to pregnancy. 25% of new mothers in Idaho have reportedly experienced moderate to severe postpartum depression in the three months following pregnancy, outpacing the national average of 13%, while 20% of pregnant women in Idaho reportedly have not been screened for depression and over 50% of pregnant women with depression reportedly go without treatment. *See* Idaho Kids Covered, *Idaho Maternal and Infant Health Report 2023,* at IKC-Maternal-and-Infant-Health-Report-2023.pdf (idahokidscovered.org); *see also* Idaho Kids Covered || Idaho Chapter of the American Academy of Pediatrics (idahoaap.org) (websites last checked December 1, 2023).

83. Yet, the State of Idaho disbanded its Maternal Mortality Review Committee in 2023, and Idaho Medicaid benefits reportedly lag behind most all other states in covering pregnancy and postpartum care. *Id.* These downward spiraling trends do not evidence action by Idaho's leadership to show concern and care for pregnant women and children. Rather, these disturbing trends further indicate that *IDAPA 16.06.01.563.02(a)* is a pretext for shaming women who do not live up to the State government's ideals of motherhood during pregnancy.

84. History reveals what lurks behind the promulgation of *IDAPA 16.06.01.563.02(a)* in 2007 and evidences that the IDAPA rule is a pretext for sex-based discrimination:

a. Defendant has been on notice for more than 30 years that the Child Protective Act does not "permit the state to intervene in the case of gestational drug abuse in order to protect the fetus" because of the limited definition of a "child" under the Act. *See* Op. Atty Gen. 91-1, Official Opinions of the Attorney General for 1991, p. 5 (1991);

b. In both 2005 and 2006, legislative efforts to amend the Idaho Code to criminally sanction women for prenatal drug use failed; and

c. Ignoring this historical context from 1991 to present, the Idaho Department of Health and Welfare promulgated *IDAPA 16.06.01.563.02(a)* without a sufficient statutory basis and continues to enforce it today against women.

## V. CLASS ACTION ALLEGATIONS

85. Plaintiff Rossow brings this action on behalf of herself and all similarly situated women who are either currently using THC while pregnant in the State of Idaho or who will consider doing so while pregnant in the future.

86. With respect to their claims for forward-looking injunctive relief, Plaintiff Rossow seeks to represent a class, pursuant to *Rule 23(b)(2) of the Federal Rules of Civil Procedure*, of all women who are now using or will in the future use THC while pregnant anywhere in the State of Idaho. As a consequence of threatened enforcement by Defendant of the above-discussed provisions of *IDAPA 16.06.01.563.02(a)* members of this class are in danger of future violation of their constitutional rights.

87. As a consequence of Defendant's demonstrated intent to enforce *IDAPA 16.06.01.563.02(a)* regulating THC use against women in Idaho, such as Plaintiff Rossow, and the threat of future enforcement of Idaho regulations regulating THC and/or other substances defined as "controlled substances" use found in *IDAPA 16.06.01.563.02(a)* against other women in Idaho, *IDAPA 16.06.01.563.02(a)* targets and penalizes women who treat their pregnancy-related symptoms with THC.

88.    There are hundreds of class members geographically dispersed throughout Idaho. The class is sufficiently numerous and diffuse that joinder of all class members, whether required or permitted, is impracticable.

89.    Plaintiff Rossow will fairly and adequately protect the interests of the class because her interests are coincident with, and not antagonistic to, those of the class.  Plaintiff Rossow has retained counsel with substantial experience in the prosecution of civil rights litigation and class action litigation.

90.    There are questions of law common to the class, *viz.*, whether the provisions of *IDAPA 16.06.01.563.02(a)* operate as to constitute, in a large fraction of the cases in which they apply, a substantial obstacle for women in treating pregnancy-related symptoms with THC in Idaho.  Questions of law and fact that are common to the members of the class predominate over questions that affect only individual members.

91.    Plaintiff Rossow's claims are typical of those of the class she seeks to represent and she is an adequate representative of the class.

92.    Defendant has acted and/or threatened to act on grounds generally applicable to the class, thereby making appropriate injunctive and declaratory relief.

93.    Class action treatment is superior to the alternatives for the fair and efficient adjudication of the controversy alleged herein.  Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would entail.  No difficulties are likely to be encountered in the management of this case that would preclude its maintenance as a class action.

94. Defendant has acted on grounds generally applicable to the entire class, thereby making final injunctive and declaratory relief appropriate with respect to the class as a whole. Prosecution of separate actions by individual members of the class would create the risk of inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for Defendant and others similarly situated.

95. As a consequence of Defendant's demonstrated intent to enforce Idaho regulations such as *IDAPA 16.06.01.563.02(a)* against pregnant women in Idaho and the threat of enforcement of *IDAPA 16.06.01.563.02(a)* against such women who use controlled substances, including THC, prenatally, the Defendant, as the Director of Idaho Department of Health and Welfare, will unconstitutionally – if not enjoined – violate the rights of such women as secured under the *Fourteenth Amendment of the U.S. Constitution* and the *Idaho Constitution.*

## VI.    CLAIMS FOR RELIEF

### COUNT I – RIGHT TO DUE PROCESS OF LAW

96. Plaintiffs hereby incorporate the allegations set forth in paragraph 1 through 95 of this Verified Complaint as if set forth fully herein.

97. Pursuant to 42 U.S.C. § 1983, Plaintiffs bring this claim challenging the constitutionality of *IDAPA 16.06.01.563.02(a)* both facially and as applied to Plaintiff Rossow and the previously identified class.

98. Plaintiffs have substantive due process rights relating to procreation, personal autonomy, bodily autonomy and privacy during pregnancy that are protected by the *Fourteenth Amendment of the United States Constitution.*

99. Plaintiffs have liberty interests in their good names, reputations, honor and integrity that are protected under the *Fourteenth Amendment of the United States Constitution.*

100.    Threatened enforcement by Defendant of *IDAPA 16.06.01.563.02(a)* violates the due process rights of Plaintiffs as guaranteed by the *Fourteenth Amendment of the United States Constitution* by threatening action – placement on the Child Protection Central Registry – against pregnant women for past use of controlled substances prenatally, including THC, without an attendant medically informed showing of actual or imminent abuse, neglect, or abandonment of an existing child, thereby unconstitutionally burdening the due process rights of women who carry their pregnancies to term in Idaho.

101.    Additionally, or in the alternative, threatened enforcement by Defendant of *IDAPA 16.06.01.563.02(a)* violates the due process rights of Plaintiffs as guaranteed by the *Fourteenth Amendment of the United States Constitution* by stigmatizing them through placement in a classification of persons who have engaged in child abuse, neglect, or abandonment, which threatens to burden them in obtaining rights or statuses including in the pursuit of professions such as childcare, foster care, group care facilities or institutions, or by making information about them in the Registry available to certain agencies performing background checks or making employment, foster care, or adoption decisions.

102.    Unless Defendant is enjoined from enforcing *IDAPA 16.06.01.563.02(a)* the placement of Plaintiffs on the Child Protection Central Registry without due process of law will continue or be likely to recur, deterring Plaintiffs from becoming pregnant and carrying their pregnancies to term in Idaho or, if they give birth in Idaho, subjecting them to economic and/or non-economic harm from Idaho Department of Health and Welfare's actions.

## COUNT II – RIGHT TO DUE PROCESS OF LAW
### (Vague and Overbroad)

103.    Plaintiffs hereby incorporate the allegations set forth in paragraph 1 through 102 of this Verified Complaint as if set forth fully herein.

104. Pursuant to 42 U.S.C. § 1983, Plaintiffs bring this claim challenging the constitutionality of *IDAPA 16.06.01.563.02(a)* both facially and as applied to Plaintiff Rossow and the previously identified class.

105. The provisions of *IDAPA 16.06.01.563.02(a)* set forth above violate the rights of Plaintiffs to due process of law for vagueness under the *Fourteenth Amendment of the United States Constitution*. The regulations, as written, fail to give adequate notice because a reasonable person could not know whether the use of controlled substances, including THC, prior to the birth of a child would subject them to placement on the Child Protection Central Registry.

106. *IDAPA 16.06.01.563.02(a)* also violates the rights of Plaintiffs to due process of law because their provisions are overbroad. The regulations, as written, regulate substantially more of a pregnant woman's conduct than is constitutionally permitted.

107. Unless Defendant is enjoined from enforcing *IDAPA 16.06.01.563.02(a)* the threat of prosecution and placement of Plaintiffs on the Child Protection Central Registry without due process will continue or be likely to recur, deterring Plaintiffs from exercising their right to privacy and bodily autonomy as guaranteed under the *Fourteenth Amendment of the United States Constitution* to become pregnant and carry their pregnancies to term in Idaho or, if they give birth in Idaho, subjecting them to economic and/or non-economic harm from Idaho Department of Health and Welfare's actions.

## COUNT III – RIGHT TO EQUAL PROTECTION

108. Plaintiffs hereby incorporate the allegations set forth in paragraphs 1 through 107 of this Verified Complaint as if set forth fully herein.

109. Pursuant to 42 U.S.C. § 1983, Plaintiffs bring this claim challenging the constitutionality of *IDAPA 16.06.01.563.02(a)* both facially and as applied to Plaintiff Rossow and the previously identified class.

110. Pregnant women and men are similarly situated, in regard to their interests as the parent of a particular child jointly created by them, in not being placed on the Child Protection Central Registry for a minimum of ten years.

111. Both women – whether pregnant or not -- and men are similarly subject to criminal prosecution for violating Idaho's controlled substance laws.

112. Demonstrating its discriminatory intent, Idaho purposively chose to use its Child Protection Act to penalize women for conduct during pregnancy rather than amend and enhance the sentences for the use of controlled substances by women prenatally.

113. Under the *Equal Protection Clause of the Fourteenth Amendment of the U.S. Constitution*, Defendant's classification of women pursuant to *IDAPA 16.06.01.563.02(a), solely* for purposes of placement on the Child Protection Central Registry as "mothers" prior to the birth of any child is unconstitutional unless the classification satisfies:

  a. Heightened strict scrutiny, which is required because family association, procreation, personal autonomy, bodily autonomy and/or privacy during pregnancy are fundamental due process rights protected by the *Fourteenth Amendment of the U.S. Constitution*;

  b. Heightened scrutiny, which is required because Defendant subjects women but not men to the identifiable classification in *IDAPA 16.06.01.563.02(a)* prenatally as already being a parent, i.e., a mother, and/or because *IDAPA 16.06.01.563.02(a)* has a disparate impact on women and is a pretext for the purpose of discriminating against women on the basis of sex/gender; and/or

  c. Heightened scrutiny or rational basis review, where Defendant knowingly subjects pregnant persons as "mothers" but not non-pregnant persons or

"fathers" to the identifiable classification in *IDAPA 16.06.01.563.02(a),* for purposes of regulating alleged abuse of "children" but without statutory authority to do so.

114.    *IDAPA 16.06.01.563.02(a)* does not satisfy one or more of these standards of review because the rule discriminates in favor of "fathers" and against "mothers" in regard to their similarly situated statuses as parents, and/or because the rule imposes a disparate impact upon women including without limitation in regard to employment opportunities, and is purposefully motivated by stereotypes of and discrimination against women. Under any of these standards, the rule is unconstitutional based upon the government's interest or the means to achieve that interest.

115.    Threatened enforcement by Defendant of *IDAPA 16.06.01.563.02(a)* violates the rights of Plaintiffs as guaranteed by the *Equal Protection Clause of the Fourteenth Amendment of the U.S. Constitution* by threatening action – placement on the Child Protection Central Registry – against pregnant women as "mothers" but not against men as "fathers" , for past use of controlled substances prenatally including THC.

116.    Unless Defendant is enjoined from enforcing *IDAPA 16.06.01.563.02(a),* the purposely targeted and discriminatory placement of Plaintiffs on the Child Protection Central Registry in violation of their constitutional rights to equal protection will continue or be likely to recur, deterring Plaintiffs from becoming pregnant and carrying their pregnancies to term in Idaho or, if they give birth in Idaho, subjecting them to economic and/or non-economic harm from Idaho Department of Health and Welfare's actions.

117.    Regardless of a man's conduct during the prenatal period or harm caused to his prenatal "child," he is not subject to placement on the Child Protection Central Registry pursuant to *IDAPA 16.06.01.563.02(a).*

## COUNT IV – RIGHTS UNDER THE IDAHO CONSTITUTION

118.     Plaintiffs hereby incorporate the allegations set forth in paragraph 1 through 117 of this Verified Complaint as if set forth fully herein.

119.     Plaintiffs bring this claim challenging under Article I, Sections 1, 13 and 21, of the *Idaho Constitution* the constitutionality of *IDAPA 16.06.01.563.02(a)* both facially and as applied to Plaintiff Rossow and the previously identified class.

120.     Plaintiffs have constitutional rights enumerated in Article I, Section 1, of the *Idaho Constitution* to be free and equal and to inalienable rights including life, liberty, happiness and safety. These enumerated rights are among and do not impair or deny the individual constitutional rights retained by Plaintiffs pursuant to Article I, Section 21, of the *Idaho Constitution*.

121.     *IDAPA 16.06.01.563.02(a)* also violates Plaintiffs' procedural and substantive due process rights as protected under the *Idaho Constitution,* Article I, Section 13.

122.     Threatened enforcement by Defendant of *IDAPA 16.06.01.563.02(a)* violates one or more of the constitutional rights of Plaintiffs as guaranteed by Article I, Sections 1, 13 or 21, of the *Idaho Constitution* by threatening action – placement on the Child Protection Central Registry – against pregnant women for past use of controlled substances prenatally, including THC, without an attendant medically informed showing of actual or imminent abuse, neglect, or abandonment of an existing child, by stigmatizing them through placement in a classification of persons who have engaged in child abuse, neglect, or abandonment, and/or by discriminating against them for exercising constitutional rights to life, liberty, happiness and safety by pursuing procreation, personal autonomy and/or bodily autonomy, because they are women, and/or because they are pregnant.

123.     Unless Defendant is enjoined from enforcing *IDAPA 16.06.01.563.02(a),* the threat of placement on the Child Protection Central Registry law will continue or be likely to recur in violation of Plaintiffs' rights under the *Idaho Constitution*, deterring Plaintiffs from becoming pregnant and carrying their pregnancies to term in Idaho or, if they give birth in Idaho, subjecting them to economic and/or non-economic harm from Idaho Department of Health and Welfare's actions.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for Judgment against Defendant as follows:

A.     Issue a declaratory judgment that *IDAPA 16.06.01.563.02(a)* as pled above violates the rights of Plaintiffs guaranteed by the *Fourteenth Amendment to the United States Constitution* and/or the *Idaho Constitution*;

B.     Issue preliminary and permanent injunctive relief, without bond, restraining the enforcement, operation and execution of *IDAPA 16.06.01.563.02(a)* as pled above by enjoining Defendant, his agents, employees, appointees or successors from enforcing, threatening to enforce or other applying the provisions of *IDAPA 16.06.01.563.02(a)*;

C.     Grant Plaintiffs an award of attorneys' fees, reasonable costs and expenses pursuant to *42 U.S.C. § 1988, Idaho Code § 12-117*, and/or the private attorney general doctrine; and,

D.     Grant such further relief as this Court deems just and proper.

DATED this 1st day of December 2023.

KEEVA ROSSOW
Plaintiff