UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| KEEVA ROSSOW and SERAH THOMPSON,<br><br>        Plaintiffs,<br><br>        v.<br><br>DAVE JEPPESEN, Director, Idaho Department of Health and Welfare, in his official capacity,<br><br>        Defendant. | Case No. 1:23-cv-00131-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

Before the Court is the Plaintiff Class's motion for a temporary restraining order and preliminary injunction (Dkt. 101). For the reasons set forth below, the Court will deny the motion for a temporary restraining order and set a hearing on the motion for a preliminary injunction.

## BACKGROUND

The facts of this case are outlined in detail in the Court's previous orders. *See Order*, Dkt. 24; *Order*, Dkt. 86. In short, in 2007, the Idaho Department of Health and Welfare adopted Idaho Administrative Code 16.06.01.563.02a., which classifies a pregnant woman's prenatal use of a controlled substance without a prescription as child abuse or neglect, resulting in a "Level Two" designation deeming the mother a

MEMORANDUM DECISION AND ORDER - 1

medium to high risk to children and requiring she remain on the Child Protection Central Registry for a minimum of ten years. *See* IDAPA 16.06.01.563.02. Idaho categorizes tetrahydrocannabinol, or THC, as a "controlled substance." I.C. § 37-2701.

Class Representative Keeva Rossow was placed on the Central Registry in December 2021 after testing positive for THC following the birth of her daughter, who was born healthy. Rossow alleges she used THC during pregnancy to treat intractable nausea and vomiting. Class Representative Serah Thompson was likewise placed on the Central Registry in April 2022 following prenatal THC use; Thompson alleges she used THC to treat anxiety, PTSD, physical pain, nausea, and vomiting during pregnancy. Her daughter was also born healthy.

In March 2023, Rossow filed this class action, challenging IDAPA 16.06.01.563.02a as unconstitutional and seeking declaratory and injunctive relief. Nine months later, in December 2023, she moved for a temporary restraining order and preliminary injunction to restrain the Department "from enforcing, threatening to enforce or otherwise applying the provisions of IDAPA 16.06.01.563.02a." *First TRO Motion*, Dkt. 26-1 at 21. The Court denied the TRO, finding Rossow had not established irreparable harm warranting such extraordinary relief given her nine-month delay, and she could "wait a little longer for the Court to fully adjudicate the merits of her motion for a preliminary injunction." *Order*, Dkt. 28 at 5. The Court

**MEMORANDUM DECISION AND ORDER - 2**

deferred the preliminary injunction motion and indicated it would set a hearing, but Rossow withdrew the motion before one could be scheduled. *Notice*, Dkt. 29.

Two years passed, during which Rossow sought pre-class certification discovery. In March 2025, the Court granted leave to add Serah Thompson as a named plaintiff and certified a class of all women currently on the Central Registry pursuant to IDAPA 16.06.01.563.02.a for prenatal THC use, and all women whom the Department will in the future substantiate for such use and place on the Central Registry. Order, Dkt. 86. In April 2025, Rossow and Thompson, on behalf of themselves and the certified class, filed their verified second amended complaint, alleging their listing on the Central Registry burdens their access to employment opportunities requiring background checks and opportunities to provide childcare or foster care. *Second Am. Compl.* ¶¶ 25-26, 78, Dkt. 92. They seek a declaratory judgment that IDAPA 16.06.01.563.02.a violates their due process and equal protection rights, as well as preliminary and permanent injunctive relief restraining the enforcement, operation, and execution of the regulation. *Id.*

Nine months later, the Plaintiff Class now renews its request for a temporary restraining order and preliminary injunction, citing recent events: on December 12, 2025, class counsel was contacted by a class member who received notice that the Department intends to place her on the Central Registry, and defense counsel stated on December 16, 2025, that the Department will continue enforcement absent an injunction. Plaintiffs again seek a temporary restraining order restraining the

**MEMORANDUM DECISION AND ORDER - 3**

enforcement, operation and execution of IDAPA 16.06.01.563.02.a and ask that a hearing on the motion for preliminary injunction be set.

## LEGAL STANDARD

The standard for issuing a TRO is "substantially identical" to the standard for issuing a preliminary injunction. *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). The movant must show she is likely to succeed on the merits, that she will suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in her favor, and that an injunction is in the public interest. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

In the Ninth Circuit, "serious questions on the merits and a balance of the hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011).

Critically, however, the purpose of a temporary restraining order is to preserve "the status quo and prevent[] irreparable harm just so long as it is necessary to hold a hearing, and no longer." *Reno Air Racing Ass'n, Inc. v. McCord*, 452 F.3d 1126, 1131 (9th Cir. 2006) (quoting *Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers*, 415 U.S. 423, 439 (1974)). The Supreme Court has instructed that TROs must "be restricted to serving [this] underlying purpose." *Granny Goose Food*, 415 U.S. at 439.

**MEMORANDUM DECISION AND ORDER - 4**

## ANALYSIS

Plaintiffs' renewed motion for a TRO suffers from the same fundamental deficiencies that led the Court to deny the prior request in December 2023. As before, Plaintiffs claim a TRO is "necessary to preserve the status quo pending a determination of the Plaintiff Class's motion for a preliminary injunction." *Second TRO Motion*, Dkt. 101-1 at 10.  But as explained in the order denying the first TRO request, the opposite is true. The Department has enforced IDAPA 16.06.01.563.02.a continuously since the regulation took effect in 2007—well before Rossow filed her initial complaint in March 2023. The status quo is nearly two decades of ongoing enforcement, and Plaintiffs seek not to preserve it but to halt it.

Injunctive relief that disrupts rather than maintains the status quo "is disfavored unless there is a very strong showing in favor of the moving party." *Miracle v. Hobbs*, 808 F. App'x 470, 473 (9th Cir. 2020) (citing *Oakland Trib., Inc. v. Chron. Pub. Co.*, 762 F.2d 1374, 1377 (9th Cir. 1985) (explaining district court was not required to issue a preliminary injunction "against a practice which has continued unchallenged for several years")). This concern carries even greater weight in the TRO context, where courts recognize very few circumstances justifying what essentially amounts to ex parte relief. *See Reno Air Racing*, 452 F.3d at 1131. No such circumstances exist here.

Nor have Plaintiffs established that they will suffer immediate or irreparable harm if a TRO is not issued—a requirement under either the *Winter* test or the sliding-

**MEMORANDUM DECISION AND ORDER - 5**

scale approach. The harms alleged—career limitations, emotional distress, and reputational injury—are the same harms that existed in December 2023 when the Court denied the first TRO motion. That these harms are serious is not in dispute. But they are not new.

Plaintiffs point to Theresa Zomer's recent contact with class counsel as evidence of changed circumstances. But Ms. Zomer's situation—a woman being processed for substantiation and potential placement on the Central Registry—is no different from the circumstances that existed throughout this litigation. The Department was substantiating women in 2023, and it is substantiating women today. That is precisely what this lawsuit challenges. The fact that Plaintiffs now have a fresh example of the Department's enforcement does not transform ongoing harm into the kind of emergency that justifies a TRO.

Similarly, defense counsel's recent statement that the Department will continue enforcement absent an injunction merely confirms what was always apparent: the Department intends to enforce its regulations until a court orders otherwise. That is not an unusual posture for any defendant in a constitutional challenge to government action.

Plaintiffs also emphasize that they now have a certified class of approximately 1,972 members and extensive discovery documenting the scope of harm caused by the Central Registry system. These developments strengthen Plaintiffs' case on the merits and may well support preliminary injunctive relief after proper consideration. But they

**MEMORANDUM DECISION AND ORDER - 6**

do not establish the kind of immediate emergency that would justify bypassing the ordinary process for a preliminary injunction hearing. The discovery merely quantifies harm that has existed since before this lawsuit was filed. And while the class includes women who may be placed on the Registry in the future, the possibility of such future placements is not a new development—it is the very ongoing enforcement this lawsuit has always challenged.

The Court recognizes that Plaintiffs raise serious constitutional questions. This Court has previously found that Plaintiffs plausibly stated claims for procedural due process violations and that there is "at least a mismatch between the stated goal of protecting 'preborn children' and the use of a system designed to protect children who are already born." *Order* at 17, Dkt. 24. These questions merit careful consideration—but that consideration is better suited to a preliminary injunction hearing where both parties can fully brief the issues and present evidence.

Plaintiffs waited nearly two years after the Court denied the first TRO to renew their request, electing to pursue discovery and class certification in the interim. They then waited an additional nine months after amending their complaint and obtaining class certification. This may have been a reasonable litigation strategy, but having made that choice, Plaintiffs cannot now claim that the situation has become so urgent that the Court must act before a preliminary injunction hearing can be held. *See Oakland Tribune*, 762 F.2d at 1377 (noting a delay of "several years" in seeking injunctive relief "implies a lack of urgency and irreparable harm"). If the harm were

**MEMORANDUM DECISION AND ORDER - 7**

truly so immediate that it could not await a hearing, Plaintiffs would not have waited nearly three years to seek emergency relief again. The Court will deny the TRO request.

## ORDER

**IT IS ORDERED that:**

1. Plaintiff Class's Motion for a Temporary Restraining Order and Preliminary Injunction (Dkt. 101) is **DENIED IN PART**.

2. Plaintiff Class's request for a Temporary Restraining Order is **DENIED.**

3. Plaintiff Class's Motion for a Preliminary Injunction is **DEFERRED**, and the Court will set a hearing on the Motion.

DATED: January 7, 2026

_____
B. Lynn Winmill
U.S. District Court Judge

MEMORANDUM DECISION AND ORDER - 8