UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| KEEVA ROSSOW and SERAH THOMPSON,<br><br>Plaintiffs,<br><br>v.<br><br>JULIET CHARRON, Director, Idaho Department of Health and Welfare, in her official capacity,<br><br>Defendant. | Case No. 1:23-cv-00131-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

Plaintiffs Keeva Rossow and Serah Thompson, on behalf of the certified class, challenge the Idaho Department of Health and Welfare's enforcement of Idaho Administrative Code Rule 16.06.01.563.02.a, which categorizes the prenatal use of a controlled substance as a basis for substantiating child abuse or neglect and for placing an individual on the Child Protection Central Registry for a minimum of ten years. Each woman was substantiated for child abuse under the regulation after testing positive for THC following the birth of her child, and each was placed on the Central Registry for a minimum of ten years.

**MEMORANDUM DECISION AND ORDER - 1**

Ms. Rossow and Ms. Thompson represent a class of Idaho women who currently appear on the Registry for prenatal use of THC, as well as those women who may be listed in the future. They allege that their and other class members' continued or future placement on the Registry violates the Due Process and Equal Protection Clauses of the Fourteenth Amendment, and they seek to enjoin the Department from "either placing or maintaining" class members' names on the Registry. They also seek a declaration that Rule 563.02.a is unconstitutional on its face and as applied.

Defendant Juliet Charron, sued in her official capacity as Director of the Idaho Department of Health and Welfare, now moves for a second time to dismiss Plaintiffs' claims. *See* Dkt. 124. The Director seeks dismissal of the complaint in its entirety on the ground that it is barred by Eleventh Amendment immunity. Alternatively, she argues that each remaining claim should be dismissed under Rule 12(b)(6) for failure to state a claim. The motion presents four questions: whether the doctrine of *Ex parte Young* permits the suit to proceed; whether the complaint plausibly alleges a denial of procedural due process; whether it states a substantive due process claim; and whether it states an equal protection violation. For the reasons that follow, the Court will grant the motion in part and deny it in part.

## BACKGROUND

The background of this case is set out at length in the Court's prior decisions, and only a brief account is needed here. In December 2021, Keeva Rossow tested positive for THC after giving birth to her daughter. Ms. Rossow acknowledges that she used marijuana during her pregnancy to alleviate physical and psychological symptoms. The

**MEMORANDUM DECISION AND ORDER - 2**

Department substantiated a report of neglect, assigned a Child Protection Level Two designation under Rule 563.02.a, and placed Ms. Rossow on the Registry for a minimum of ten years. She pursued and exhausted administrative review, and the substantiation was affirmed. Serah Thompson was substantiated in 2022 on materially similar facts after she tested positive for THC at the birth of her daughter; she did not pursue administrative review. Ms. Thompson's listing, like Ms. Rossow's, continues to constrain her employment prospects.

Ms. Rossow filed this class action in March 2023, alleging due process and equal protection violations under 42 U.S.C. § 1983, as well as violations of the Idaho Constitution. The Director filed a motion to dismiss, which was granted in part and denied in part. The Court dismissed the vagueness claim with prejudice, and the equal protection and state-law claims with leave to amend. *See* Dkt. 24. The Court denied the motion to dismiss the procedural and substantive due process claims. The Court later dismissed the state-law claims as barred by the Eleventh Amendment. *See* Dkt. 68.

Ms. Rossow subsequently amended her complaint, adding Ms. Thompson as a named plaintiff and supplementing allegations. On March 15, 2025, the Court certified a class defined as all women now appearing on the Registry under Rule 563.02.a for THC use while pregnant, together with all women whom the Department will in the future substantiate and list under that rule on the same basis. *See* Dkt. 86 at 31. The operative complaint is the Verified Second Amended Complaint. *See* Dkt. 92. The Director then filed this second motion to dismiss, which seeks dismissal of all remaining claims under Rules 12(b)(1) and 12(b)(6). *See* Dkt. 124.

**MEMORANDUM DECISION AND ORDER - 3**

**LEGAL STANDARD**

To survive a motion under Rule 12(b)(6), a complaint must plead "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "On a Rule 12(b)(6) motion to dismiss, the court accepts the facts alleged in the complaint as true, and dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged." *Yoshikawa v. Seguirant*, 41 F.4th 1109, 1114 (9th Cir. 2022). The Court draws all reasonable inferences in the plaintiff's favor, but it need not credit legal conclusions dressed up as factual allegations. *See Iqbal*, 556 U.S. at 678.

The Director's sovereign immunity defense is "quasi-jurisdictional" and may be raised under either Rule 12(b)(1) or Rule 12(b)(6). *Sato v. Orange Cnty. Dep't of Educ.*, 861 F.3d 923, 927 n.2 (9th Cir. 2017). Because the Director's immunity argument raises a "facial attack" and does not rest on a disputed fact, the standards are materially the same for purposes of this motion, and which standard applies "makes no difference." *See Sam v. Dep't of Pub. Safety*, No. CV 20-00164 SOM-RT, 2021 WL 1032282, at *2 (D. Haw. Mar. 17, 2021); *see also, e.g.*, *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014) (it has been recognized that "[t]he district court resolves a facial attack as it would a motion to dismiss under Rule 12(b)(6): [a]ccepting the plaintiff's allegations as true and drawing all reasonable inferences in the plaintiff's favor, the court determines whether the allegations are sufficient as a legal matter to invoke the court's jurisdiction."). The Court

**MEMORANDUM DECISION AND ORDER - 4**

limits itself to examination of the factual allegations of the complaint, interpreting them in the light most favorable to Plaintiffs. *Id.*

## ANALYSIS

### A.   Sovereign Immunity

The Eleventh Amendment shields unconsenting States from suit in federal court. *Flint v. Dennison*, 488 F.3d 816, 825 (9th Cir. 2007). This immunity extends to state officials sued in their official capacities under 42 U.S.C. § 1983, as such a suit "is no different from a suit against the State itself." *Id.* But the rule has a "vital exception." Under *Ex parte Young*, 209 U.S. 123 (1908), a plaintiff may sue a state official for prospective relief to halt an ongoing violation of federal law. In determining whether the *Ex parte Young* exception applies, "a court need only conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon Md. Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002). "Under this principle, a plaintiff may seek 'prospective injunctive relief that governs the official's future conduct,' but not 'retroactive relief that requires the payment of funds from the state treasury.'" *Jensen v. Brown*, 131 F.4th 677, 696 (9th Cir. 2025) (quoting *Nat'l Res. Def. Council v. Cal. Dep't of Transp.*, 96 F.3d 420, 422 (9th Cir. 1996)).

The Director contends that the *Ex parte Young* exception does not apply because Plaintiffs bring their claims based on a past event, namely their past substantiations and listings, and the relief they seek is impermissibly "reparative," aimed solely at compensating Plaintiffs for the "lingering effects" of these past substantiations. The

**MEMORANDUM DECISION AND ORDER - 5**

Court disagrees. As the Ninth Circuit has made clear, "*Ex parte Young* does not demand that the relief sought be unrelated to past violations." *Jensen*, 131 F.4th at 697; *see also Cardenas v. Anzai*, 311 F.3d 929, 938 (9th Cir. 2002) ("The fact that the plaintiffs' claims depend in part upon past conduct by the state…is not dispositive."). "Rather, a plaintiff may pursue relief that would relate to a past violation, so long as it would not amount to relief *solely for the past violation*." *Id.* (quoting *Doe v. Lawrence Livermore Nat'l Lab'y*, 131 F.3d 836, 841 (9th Cir. 1997) (quotation marks and brackets omitted)).

In *Jensen*, the Ninth Circuit held that expungement of negative performance evaluations and letter of reprimand from a mathematics professor's personnel file constituted prospective relief, even though the negative records were placed in the file as a result of the school administrators' alleged past constitutional violations. *Id.* at 697. Jensen alleged that the school administrators issued the reprimand and negative performance evaluations in retaliation for his engaging in speech protected by the First Amendment. Such alleged violation was "ongoing," the court explained, as long "as the retaliatory records continue[d] to exist in Jensen's personnel file," where their presence posed an "obvious threat" to his "career advancement." *Id.* at 698. Expungement would end this ongoing violation. Thus, the expungement of the negative records did not amount "solely to relief for a past violation" because its goal was not to compensate him for a past wrong but to compel the school administrators "to cease [their] actions in violation of federal law and to comply with constitutional requirements." *Id*. at 697.

The reasoning of *Jensen* controls here. Plaintiffs do not seek damages or any remedy measured by a past loss; they seek removal from the Child Protection Central

**MEMORANDUM DECISION AND ORDER - 6**

Registry and an injunction against the rule's enforcement going forward. Like the negative personnel-file records in *Jensen*, placement on the Registry is "unquestionably stigmatizing" and imposes a tangible burden on a listed individual's ability to obtain employment, licenses, and other benefits. *See* Dkt. 24 at 6–8 (citing *Humphries v. County of Los Angeles*, 554 F.3d 1170, 1186–88 (9th Cir. 2009)). And just as in *Jensen*, the alleged violations at issue here remain ongoing for as long as class members' names appear on the Registry. Because an injunction directing the removal of class members' names from the Registry would put an end to this ongoing violation and would prevent present and future harm to them, such relief cannot be characterized solely as retroactive and is not barred by the Eleventh Amendment. *Id. See also Flint,* 488 F.3d at 825.

This conclusion is reinforced by the composition of the certified class, which includes not only women now listed but also all women whom the Department will substantiate and list under Rule 563.02.a in the future. *See* Dkt. 86 at 31. As to those women, the Director's argument fails on its own terms. The Department's future application of the rule cannot be described as a completed act with lingering effects, and a suit to enjoin a state official from enforcing an allegedly unconstitutional rule going forward is a paradigmatic application of *Ex parte Young*. Whatever else may be said about the named Plaintiffs' own substantiations, the class claims encompass the ongoing and threatened enforcement of the rule itself.

*Bird v. Department of Human Services*, 935 F.3d 738 (9th Cir. 2019) does not compel a different result. In *Bird*, the Ninth Circuit considered whether plaintiff's claim alleging due process violations arising from her listing on the state's child abuse registry

**MEMORANDUM DECISION AND ORDER - 7**

was barred by the applicable statute of limitations. In affirming the dismissal of Bird's due process claim as untimely, it held that Bird's listing on the state's child abuse registry without due process did not constitute a "continuing violation" for purposes of extending the limitations period. Although Bird's injuries resulting from her placement on the registry continued "to the present day," that "continuing effect [was] insufficient to constitute a continuing violation." *Id.*

Admittedly, at first glance, this holding would appear to support the Director's contention that Plaintiffs have failed to allege an "ongoing violation." But, as one court observed, "the similarity of these shorthand terms belies a fundamental difference in the underlying doctrines[.]" *Johnson v. Jessup*, 381 F. Supp. 3d 619, 636 n.19 (M.D.N.C. 2019). The "continuing violation" exception to the statute of limitations "is occasioned by continual unlawful acts, not by continual ill effects from an original violation." *Garcia v. Brockway*, 526 F.3d 456, 462 (9th Cir. 2008). By comparison, the "ongoing violation" requirement of *Ex parte Young* is satisfied if the relief sought would "serve the purpose of preventing present and future harm," even if that relief relates to a past violation. *See Flint*, 488 F.3d at 825. These are distinct inquiries serving different ends. *Id.* For this reason, *Bird's* holding about when a damages claim accrues says little about whether a federal court may enjoin a state official's ongoing maintenance of an allegedly unconstitutional listing.[1]

---

[1] The Director's analogy to a criminal conviction (Mot. 7) illustrates the difficulty rather than resolving it. A conviction is the judgment of a court, entered after a proceeding with the full apparatus of criminal process and reviewable by direct appeal and collateral attack. A Registry listing is an administrative designation that the Department itself creates, maintains, and discloses, and that no court has reviewed. The burglar in the Director's hypothetical may not relitigate his conviction through § 1983, but that is because the conviction—not a clerk's later

**MEMORANDUM DECISION AND ORDER - 8**

The Director's reliance on *Filyaw v. Corsi*, 150 F.4th 936 (8th Cir. 2025) is equally misplaced. In *Filyaw*, a divided Eighth Circuit panel held that a challenge to a one-time, constitutionally deficient Medicaid pre-termination notice sought retrospective relief, because the plaintiff's loss of coverage was the effect of a discrete past act. As applied to the named Plaintiffs' challenges to the process attending their own substantiations—events fixed at discrete points in the past—that reasoning has some force. But *Filyaw* represents a minority view that does not bind this Court. Six circuits, including the Ninth Circuit, hold that there is an ongoing constitutional violation for purposes of *Ex parte Young* when a state deprives an individual of property without due process unless and until the property has been restored or the state has provided constitutionally sufficient process. *See K.W. ex rel. D.W. v. Armstrong*, 789 F.3d 962 (9th Cir. 2015); *Cooperrider v. Woods*, 127 F.4th 1019 (6th Cir. 2025); *Sherwood v. Marchiori*, 76 F.4th 688 (7th Cir. 2023); *Coakley v. Welch*, 877 F.2d 304 (4th Cir. 1989); *Lewis v. New Mexico Dep't of Health*, 261 F.3d 970 (10th Cir. 2001); *Russell v. Dunston*, 896 F.2d 664, 665 (2d Cir. 1990).

In *K.W.*, the Ninth Circuit upheld a classwide injunction restoring Medicaid participants to the individualized budgets they held before the State issued allegedly defective notices, explaining that the injunction "grants only prospective relief allowed under the Eleventh Amendment" because it did not compensate class members for past losses. *Id.* at 974–75. The Director seeks to distinguish *K.W.* on the ground that the

---

report of it—worked the deprivation, and because adequate process attended it. Whether adequate process attended these listings is the merits question the Court does not reach here.

**MEMORANDUM DECISION AND ORDER - 9**

violation there recurred through an annual budget recalculation, whereas here, she says, nothing is recalculated. But the distinction does not aid her. The State in *K.W.* repeatedly applied an allegedly defective methodology; the Department here repeatedly gives effect to an allegedly defective listing, maintaining each class member on the Registry and disclosing her as a risk to children. As such, Plaintiffs' continued listing is ongoing conduct within the reach of *Ex parte Young*.

The Director makes one further argument. She contends that because no named Plaintiff has a live claim, the class claims must fall with them. The premise fails: the named Plaintiffs do have live claims, because each remains listed under the rule the Department continues to enforce. And even if their individual claims were in doubt, the certified class independently includes women the Department will substantiate in the future, as to whom *Ex parte Young* plainly applies. In short, the complaint alleges an ongoing violation of federal law and seeks prospective relief. The Eleventh Amendment does not bar the suit, and the motion is denied to the extent it rests on the Director's sovereign immunity.

### B.   Procedural Due Process

The Director next argues that the Department's enforcement of Rule 563.02.a satisfies due process, pointing to the 2025 amendments to the IDAPA rules that revised the administrative review process. The Director contends these amendments address each of the concerns the Court identified in its prior decision.

The 2025 amendments do not warrant dismissal at this stage. The certified class includes all women currently appearing on the Central Registry under Rule 563.02.a—

**MEMORANDUM DECISION AND ORDER - 10**

among them the named Plaintiffs and the class members who were substantiated and listed under the rules in effect before July 2025. *See* Dkt. 86 at 31. As to those women, the process the Court evaluated in its prior decision is the process they actually received, and the Court has already concluded that the complaint plausibly alleges that process created a considerable risk of erroneous deprivation without adequate safeguards. Dkt. 24 at 9–12. Amendments that took effect years after those listings did not supply the process those class members allegedly were denied, and the Director identifies nothing in the amended rules that revisits or cures their existing listings.

The amended rules may well bear on the claims of women substantiated after July 2025 and on the scope of any prospective relief. But whether the current process satisfies the balancing test of *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976), is a question the Court need not resolve on this motion. The parties dispute how the amended rules operate in practice, discovery has not yet been taken on that question, and the Court has consolidated the preliminary injunction motion with a trial on the merits. Dkt. 111. Taking the allegations of the Second Amended Complaint as true, Plaintiffs have stated a plausible procedural due process claim. The motion to dismiss that claim is denied.

### C.    Substantive Due Process

The Director also seeks dismissal of Plaintiffs' substantive due process claim for a second time. She reads the substantive due process claim to rest on a single asserted right: the "fundamental right to use THC while pregnant." So framed, the claim fails to the extent it depends on the application of strict scrutiny. As the Court explained in its prior decision, "federal law does not recognize a fundamental right to use medical

**MEMORANDUM DECISION AND ORDER - 11**

marijuana…to alleviate excruciating pain and human suffering." *See* Dkt. 24 at 15 (quoting *Raich v. Gonzales*, 500 F.3d 850, 866 (9th Cir. 2007)).

Plaintiffs respond that they never asserted a right to use THC; they say the complaint pleads facts supporting other theories—enumerated rights under the First, Fourth, and Fifth Amendments and unenumerated rights of privacy, autonomy, and bodily integrity, including what they describe as the right not to have a single body divided by legal fiction into "two persons." *See* Dkt. 132 at 13. They invoke the rule that a complaint may not be dismissed for an "imperfect statement of the legal theory supporting the claim," so long as it pleads facts plausibly entitling them to relief on *some* viable theory. *Johnson v. City of Shelby*, 574 U.S. 10, 11 (2014).

Contrary to Plaintiffs' argument, they cannot expand the universe of asserted rights a without specifically articulating those rights. The Supreme Court explicitly requires "a careful description of the asserted right." *Reno v. Flores*, 507 U.S. 292, 302 (1993) (cleaned up). This requires the Court "to focus on the allegations in the complaint" to determine how Plaintiffs describe the fundamental right at stake, and how the Department's regulation allegedly infringes on that right. *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 125 (1992).

Just as alleged in the original complaint, Plaintiffs allege the Department's enforcement of its regulation violates their "substantive due process rights relating to procreation, personal autonomy, bodily autonomy, and privacy during pregnancy[.]" *Compare* Dkt. 92 ¶¶ 103, 105 *with* Dkt. 1 ¶¶ 38, 40. Based on these same allegations, the Court previously determined that "the fundamental right at issue is better characterized as

**MEMORANDUM DECISION AND ORDER - 12**

the right to bodily autonomy and integrity." *See* Dkt. 24 at 15. Analogizing Ms. Rossow's use of marijuana to alleviate her pregnancy symptoms to the plaintiff in *Raich* using it to alleviate suffering from her health conditions, the Court found that *Raich* necessarily foreclosed the argument that "[a] fundamental right is implicated by the Department's regulation." *Id.* at 15–16. None of the new allegations in the operative amended complaint lead the Court to a different conclusion.

Conversely, none of the Director's renewed arguments in support of her motion to dismiss persuade the Court to revisit its earlier conclusion allowing the substantive due process claim to proceed under rational basis review. *Id.* at 16. The absence of a fundamental right does not end the analysis; it merely sets the standard of review at rational basis, as the Court's prior decision makes clear. Rational-basis review, though deferential, "is not a toothless one." *Mathews v. De Castro*, 429 U.S. 181, 185 (1976). The Court previously held that the complaint plausibly alleged a mismatch between the interest the Director invokes—protecting "preborn life" from "the dangers of drugs"— and a Registry that Idaho law establishes to protect *existing* children from those who have abused, neglected, or abandoned them, given that the Child Protective Act defines a "child" as a person "under the age of eighteen." Dkt. 24 at 16–17 (quoting Idaho Code § 16-1602(10)). Plaintiffs now plead that same theory with more factual support, and the Director offers no persuasive reason to abandon the Court's earlier reasoning.

The Director's one new argument does not change the analysis. She stresses that each named Plaintiff was substantiated only after her child was born—Ms. Rossow twelve days after, Ms. Thompson during her postpartum recovery—and infers that the

**MEMORANDUM DECISION AND ORDER - 13**

rule therefore aims to protect children after birth. But the timing of the *substantiation* does not resolve the asserted mismatch, because the conduct the rule categorizes is *prenatal* use, and a registry entry recorded after the child is born does little, on the face of these allegations, to advance the protection of that child or of any other. Whether the rule ultimately survives rational basis review is a question for a developed record.

### D. Equal Protection

Plaintiffs, however, still fail to plausibly allege an equal protection violation. They contend that Rule 563.02.a denies equal protection because it burdens women, as "mothers," for conduct during pregnancy while imposing no comparable burden on men, as "fathers." The Director responds that the rule classifies on the basis of pregnancy—a physical condition—rather than sex, and therefore triggers only rational basis review.

As the Court recognized in resolving the Director's first motion to dismiss, the Supreme Court does not treat pregnancy as a gender-based classification. *See* Dkt. 24 at 20 (citing *Toomey v. Clark*, 876 F.2d 1433, 1437 (9th Cir. 1989) (citing *Geduldig v. Aiello*, 417 U.S. 484, 496 n.20 (1974) ("[U]nder equal protection cases, [pregnancy] classifications are not gender based.")). A pregnancy-based classification therefore escapes heightened scrutiny absent a showing the distinction is "a mere pretext[] designed to effect an invidious discrimination against the members of one sex or the other." *Geduldig*, 417 U.S. at 496 n.20. To allege pretext, a plaintiff must plead facts suggesting the regulation has a discriminatory effect and that it was adopted with a discriminatory intent or purpose. *Toomey*, 876 F.2d at 1437. "Discriminatory purpose" implies more than awareness of consequences; it requires that the decisionmaker chose

**MEMORANDUM DECISION AND ORDER - 14**

the challenged course "at least in part because of, not merely in spite of, its adverse effects upon an identifiable group." *Pers. Adm'r of Mass. v. Feeney*, 442 U.S. 256, 279 (1979) (cleaned up).

In its prior decision, the Court found that the original complaint pleaded discriminatory impact but alleged no facts from which discriminatory intent could be inferred. *See* Dkt. 24 at 21. The Court granted leave to amend to allow Plaintiffs to plead such facts.  Plaintiffs identify paragraphs 67 through 89 of the Second Amended Complaint as supplying the missing intent allegations. Taken together, those paragraphs allege that the rule disparately impacts women and rely on a set of asserted inconsistencies, historical background, and stereotyped expectations of women as mothers said to expose the rule as a pretext for sex discrimination. None of these allegations, alone or together, supports a plausible inference that the Department adopted Rule 563.02.a because of, rather than in spite of, its effect on women.

Plaintiffs' new allegations include few facts. Paragraphs 67–76 merely recite the law concerning invidious discrimination and discriminatory intent. The disparate-impact allegations simply describe the regulatory scheme and establish that the rule burdens women and not men, because only women become pregnant and can prenatally expose a fetus. *See* Dkt. 92 ¶¶ 77–78. At best, these allegations merely restate the disparate impact theory the Court previously found insufficient. As for those allegations specifically directed at "pretext," such allegations consist primarily of conclusory assertions and legal conclusions. *Id.* at ¶¶ 79–89.

**MEMORANDUM DECISION AND ORDER - 15**

Setting aside the conclusory framing, the pretext allegations reduce to a handful of concrete contentions: that the rule lacks express statutory authority, is inconsistent with the statutory definition of "child," penalizes women without a criminal conviction, reaches controlled substances but not alcohol or tobacco, and imposes a penalty that neither remedies past harm nor identifies less restrictive alternatives. *See* Dkt. 92 ¶¶ 80–85. Each is directed at the fit between the rule and its asserted justification—matters relevant, if at all, to rational basis review—not at whether the Department harbored a purpose to discriminate against women. The asserted under-inclusiveness in failing to include alcohol and tobacco is especially weak as evidence of intent: the line the rule draws tracks Idaho's pre-existing schedules of controlled substances, *see* Idaho Code § 37-2701(e), rather than any classification gerrymandered around sex.

To the extent Plaintiffs rely on the history that "lurks" behind the promulgation of the rule to show pretext, these allegations fare no better. Plaintiffs trace a sequence beginning with a 1991 Attorney General opinion observing that the Child Protective Act did not then reach gestational drug use, continuing through the failure of bills in 2005 and 2006 that would have criminalized prenatal drug use, and culminating in the Department's promulgation of Rule 563.02.a in 2007. *See* Dkt. 92 ¶¶ 30–48, 89. Taken as true, that history reflects a sustained state interest in addressing the prenatal exposure of children to controlled substances. An interest in deterring such exposure is not a purpose to disadvantage women; that women alone bear the resulting burden again follows from the fact that only a pregnant woman can cause the exposure. The Attorney General's opinion and the failed bills were, moreover, the work of actors other than the Department,

**MEMORANDUM DECISION AND ORDER - 16**

and Plaintiffs allege no facts connecting them to the purpose with which the Department adopted the rule in 2007. At most, the pleaded history is consistent with the State having acted in spite of the rule's effect on women—which *Feeney* holds is not enough. 442 U.S. at 279.

That leaves the allegations that the rule reflects "stereotyped expectations" of "mothers-to-be" and serves as a "pretext for shaming" women who fall short of them. *See* Dkt. 92 ¶¶ 79, 88. Plaintiffs rely on *United States v. Virginia*, 518 U.S. 515, 533–34 (1996), and *Nevada Department of Human Resources v. Hibbs*, 538 U.S. 721, 729, 736 (2003), for the principle that the State may not perpetuate the "legal, social, and economic inferiority of women" or act on "the pervasive presumption that women are mothers first, and workers second." But *Virginia* and *Hibbs* condemned classifications that explicitly drew lines by sex or rested on overbroad generalizations about women's proper roles; they do not relieve a plaintiff challenging a *pregnancy* classification of the obligation to plead facts showing that the classification is a pretext for sex discrimination.

Still, Plaintiffs' stereotype allegations are conclusory, and the facts offered to anchor them—rising infant and maternal mortality in Idaho and the 2023 disbanding of the State's Maternal Mortality Review Committee, *id.* ¶¶ 87–88—postdate the rule's 2007 adoption by more than a decade and shed no light on the purpose with which it was promulgated. Simply put, even accepting the well-pleaded facts as true and drawing all reasonable inferences in Plaintiffs' favor, Plaintiffs still fail to allege any basis for finding discriminatory intent. Thus, intermediate scrutiny does not apply under this theory.

MEMORANDUM DECISION AND ORDER - 17

Plaintiffs offer a second route to heightened scrutiny. They attempt to reframe the rule's classification as creating a facial gender classification "mothers" and "fathers," taking invidiousness out of the equation. In contrast to pregnancy-based classifications, the Supreme Court holds laws tied to the sex of the parent "differentiate based on gender, and therefore attract heightened review[.]" *Sessions v. Morales-Santana*, 582 U.S. 47, 58 (2017).

In *Morales-Santana*, the Supreme Court invalidated, on equal protection grounds, a statute that imposed different physical-presence requirements on unwed mothers and unwed fathers seeking to confer citizenship to a child born abroad. 582 U.S. at 54. The statute's gender classification was stark: to confer citizenship to a child born abroad, mothers needed to have been physically present in this country for one year while fathers were required to have been here for ten. The Court found the statute rested on "the obsolescing view that unwed fathers are invariably less qualified and entitled than mothers to take responsibility for nonmarital children." *Id.* at 62–63 (cleaned up). It therefore applied heightened scrutiny to the law because it differentiated on the basis of gender between unmarried mothers and fathers who were otherwise similarly situated.

Here, Plaintiffs argue the Department has redefined "parenthood" to include the prenatal period by "deeming embryos and fetuses to be 'children' for purposes of [the rule]." *See* Dkt. 92 ¶ 60. Yet, the rule "applies only to a woman as 'mother' prenatally while [the rule] does not apply to a man as a 'father' until after his child has been born." *See* Dkt. 132 at 26. Like the statute in *Morales-Santana*, they argue the rule embodies the

**MEMORANDUM DECISION AND ORDER - 18**

same "anachronistic" and "obsolescing views" that treat only the woman as responsible for the wellbeing of the fetus. *See* Dkt. 92 ¶ 65.

"Any law premised on generalizations about the way women are—or the way men are—will fail constitutional scrutiny because it serves no important governmental objective." *Free the Nipple-Fort Collins v. City of Fort Collins, Colorado*, 916 F.3d 792, 801 (10th Cir. 2019) (cleaned up). As the Supreme Court has explained, such generalizations "have a constraining impact, descriptive though they may be of the way many people still order their lives." *Morales-Santana*, 582 U.S. at 63.  They "may create a self-fulfilling cycle of discrimination that forces women to continue to assume the role of primary family caregiver." *Id.* at 63 (cleaned up) (quoting *Hibbs*, 538 U.S. at 736).

On the other hand, "[p]hysical differences between men and women are enduring." *Virginia*, 518 U.S. at 533. And in some cases, such differences justify differential treatment. *See, e.g., Nguyen v. INS*, 533 U.S. 53, 58–59 (2001). Such is the case here. *Morales-Santana* condemned a distinction resting on a stereotype about which parent would bear responsibility; the line here rests on biological reality that only women can become pregnant and expose a fetus prenatally to a controlled substance. As to that fact of biology, mothers and fathers are not similarly situated, and "gender-specific terms can mark a permissible distinction" when they track a real difference rather than a stereotype. *Nguyen*, 533 U.S. at 73; *see also Lehr v. Robertson*, 463 U.S. 248, 260 n.16 (1983) ("The mother carries and bears the child.").

Nor does the timing of the administrative substantiation transform a pregnancy classification into a sex classification. The fact that fixes the categorization is the prenatal

**MEMORANDUM DECISION AND ORDER - 19**

exposure—regardless of whether the Department records the substantiation before or after delivery. And the Supreme Court has explained that the regulation of a condition only one sex can experience does not trigger heightened scrutiny absent invidious purpose; just as "the goal of preventing abortion does not constitute invidiously discriminatory animus against women," *Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215, 236 (2022) (cleaned up), neither does an interest in preventing prenatal exposure to controlled substances. Because the rule does not classify by gender and Plaintiffs have not pleaded pretext, rational basis review governs.

"Under the rational basis test, [a government act] survives an equal protection challenge 'if there is a rational relationship between the disparity of treatment and some legitimate governmental purpose.'" *United States v. Ayala-Bello*, 995 F.3d 710, 715 (9th Cir. 2021) (quoting *Heller v. Doe*, 509 U.S. 312, 320 (1993)). Because only pregnant women can expose a fetus to a controlled substance prenatally, pregnant and non-pregnant people are not similarly situated. *See Michael M. v. Superior Court*, 450 U.S. 464, 469 (1981); Dkt. 24 at 22–23. As such, Plaintiffs have not stated an equal protection claim.

Finally, the question remains whether to dismiss the equal protection claim with or without leave to amend. The Court already gave Plaintiffs leave to cure the very defect that persists—the absence of facts showing discriminatory intent. That effort, though substantial, does not plead intent, and Plaintiffs identify no further facts that would. On this record, another round of amendment would be futile. *See Garmon v. County of Los*

**MEMORANDUM DECISION AND ORDER - 20**

*Angeles*, 828 F.3d 837, 842 (9th Cir. 2016) (leave may be denied where amendment would be futile). The equal protection claim is therefore dismissed with prejudice.

### E.   Remaining Claims

The Director also moves to dismiss any vagueness or state-law claims that the Second Amended Complaint may re-allege. The Court previously dismissed the vagueness claim without leave to amend and dismissed the state-law claims. *See* Dkts. 24, 68. To the extent the operative complaint repleads those claims to preserve them for appeal, that step was unnecessary, *see Lacey v. Maricopa County*, 693 F.3d 896, 928 (9th Cir. 2012) (en banc), and the Court reaffirms its prior rulings. The vagueness claim remains dismissed with prejudice, and the state-law claims remain dismissed as barred by the Eleventh Amendment. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89 (1984).

## ORDER

**IT IS ORDERED** that the Director's second Motion to Dismiss (Dkt. 124) is GRANTED in part and DENIED in part. Plaintiffs' equal protection claim, vagueness claim, and state-law claims are dismissed with prejudice.

DATED: June 24, 2026

B. Lynn Winmill
U.S. District Court Judge

**MEMORANDUM DECISION AND ORDER - 21**

MEMORANDUM DECISION AND ORDER - 22