UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| KEEVA ROSSOW and SERAH THOMPSON,<br><br>Plaintiffs,<br><br>v.<br><br>JULIET CHARRON, Director, Idaho Department of Health and Welfare, in her official capacity,<br><br>Defendant. | Case No. 1:23-cv-00131-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

Before the Court is the Plaintiff Class's second motion to compel (Dkt. 134).

Plaintiffs request that the Court compel the Idaho Department of Health and Welfare's

response to Interrogatory No. 22 and Requests for Production Nos. 25–38. The

Department opposes the motion, arguing the requests are unduly burdensome,

disproportional to the needs of the case, and seek irrelevant or protected information. For

the reasons described below, the Court will grant the motion in part and deny it in part.

## BACKGROUND

In 2007, the Idaho Department of Health and Welfare adopted Idaho

Administrative Code Rule 16.06.01.563.02a, which classifies a pregnant woman's

prenatal use of a controlled substance without a prescription as an incident of child abuse

**MEMORANDUM DECISION AND ORDER - 1**

or neglect. An individual substantiated under the rule receives a level two designation, meaning she "has been determined to pose a medium to high risk to children and will remain on the Child Protection Central Registry for a minimum of ten (10) years." IDAPA 16.06.01.563. Idaho categorizes tetrahydrocannabinol, or THC, as a controlled substance. *See* I.C. § 37-2701(e).

Class representatives Keeva Rossow and Serah Thompson were each "substantiated" under the rule after testing positive for THC following the birth of a child, and each was placed on the Central Registry. They filed this class action challenging IDAPA 16.06.01.563.02a as unconstitutional and seeking declaratory and injunctive relief against Defendant Juliet Charron, sued in her official capacity as Director of the Idaho Department of Health and Welfare. In March 2025, the Court certified a class of all women who currently appear on the Central Registry pursuant to the rule for THC use while pregnant, together with all women whom the Department will substantiate and list under the rule in the future. Dkt. 86 at 31.

Plaintiffs later filed a second motion for a temporary restraining order and preliminary injunction. *See* Dkt. 100. Rather than resolve that motion on a preliminary record, the Court consolidated the hearing on the motion with a trial on the merits, *see* Fed. R. Civ. P. 65(a)(2), and entered an amended scheduling order requiring all factual discovery to be completed by July 17, 2026. *See* Dkts. 111, 117. In February 2026, Plaintiffs served their first set of post-certification discovery requests—Interrogatory No. 22 and Requests for Production Nos. 25–38 among them. The Department objected to many of those requests. When the parties were unable to resolve the dispute on their own,

MEMORANDUM DECISION AND ORDER - 2

they submitted position statements, and the Court's clerk held an informal conference. Despite that conference and additional discussions between the parties, several disputes remained. Ultimately, the Court granted permission for Plaintiffs to file this motion to compel, which is now fully briefed. Discovery in this case is subject to a protective order that includes an attorneys'-eyes-only designation. *See* Dkts. 55, 56, and 98.

After the motion to compel was fully briefed, the Court issued its decision granting in part and denying in part the Director's second motion to dismiss. *See* Dkt. 143. Both the procedural and substantive due process claims survive. The equal protection claim, however, has been dismissed with prejudice—as were the vagueness and state-law claims. *Id.* at 14–21.

## LEGAL STANDARD

Federal Rule of Civil Procedure 26 governs the scope and limits of discovery. It allows parties to obtain discovery of "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). In determining proportionality, courts must consider "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.*

Pursuant to Rule 37, a party seeking discovery may move for an order compelling production by a party who has failed to answer an interrogatory or produce requested documents. Fed. R. Civ. P. 37(a)(3). While the moving party must make a threshold

**MEMORANDUM DECISION AND ORDER - 3**

showing of relevance, *see, e.g., Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978), the party resisting discovery carries the "heavy burden" of showing specifically why the discovery request is irrelevant, unduly burdensome, disproportional to the needs of the case, or otherwise improper. *See Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975).

## ANALYSIS

Plaintiffs seek to compel the Department's response to Interrogatory No. 22 and Requests for Production Nos. 25–38. Those requests fall into three broad categories: (1) who in the class currently appears on the Central Registry pursuant to IDAPA 16.06.01.563.02a; (2) how the Department substantiates class members for prenatal THC use and places them on the Central Registry; and (3) what happens to class members once they are on the Central Registry. The Department objects to this discovery on the grounds that the requests are overly broad, irrelevant, unduly burdensome, and not proportional to the needs of the case. In addition, the Department argues that the requests implicate serious privacy concerns that outweigh any need for the information sought. With this context in mind, the Court will first address Interrogatory No. 22 before turning to the disputed requests for production.

### A.  Interrogatory No. 22

Interrogatory No. 22 asks the Department to identify each class member by name, contact information, date of birth, and social security number, along with the dates of her substantiation and placement on the Central Registry, her level designation, and the name and position of the person or entity who reported her alleged prenatal THC use. The

**MEMORANDUM DECISION AND ORDER - 4**

Department objects to disclosing two categories of this information: class members' social security numbers and information identifying reporting parties.

The Court will not compel the Department to disclose class members' social security numbers. A social security number is among the most sensitive pieces of personal identifying information, and its disclosure—even under a protective order—carries a real risk of harm through inadvertent release or identity theft. *See Dr. Erik Natkin, DO PC v. Am. Osteopathic Ass'n*, No. 3:16-CV-01494-SB, 2022 WL 19914189, at *4 (D. Or. May 11, 2022). As the class members have never received direct notice of the class action and the opportunity to opt-out, they retain their strong interest in the privacy of their social security numbers. *Cf. Rollins v. Dignity Health*, No. 13-CV-01450-JST, 2019 WL 8165915, at *6 (N.D. Cal. Oct. 28, 2019) (recognizing class members' confidentiality interests where they had no opportunity to opt out of the litigation); *Jackson v. Papa John's USA, Inc.*, No. 1:08-CV-2791, 2009 WL 1011105, at *4 (N.D. Ohio Apr. 15, 2009) ("[A]bsent class members additionally have a strong interest in the privacy of their social security numbers.").

Set against that privacy interest, the need for social security numbers is slight. Class counsel wants them to help locate class members whose names or contact information may have changed, but the Department must already identify each class member's name, contact information, and date of birth, and class counsel has not explained why that is not enough to track them down. The privacy interest outweighs the marginal benefit of adding social security numbers to the mix. *See Artis v. Deere & Co.*,

**MEMORANDUM DECISION AND ORDER - 5**

276 F.R.D. 348, 352–53 (N.D. Cal. 2011) (requiring a careful balancing of the need for discovery against the fundamental right to privacy).

The identity of reporting parties is a closer question, but the Court will not compel disclosure of this information. Plaintiffs say the reporters' names "may lead to the discovery of evidence" supporting their unarticulated theory that these reporters acted on Department "directives" in violation of the Fourth Amendment. Plaintiffs, however, do not plead a Fourth Amendment violation—either as a standalone claim or as a basis for their substantive due process claim[1]—and "[t]he allegations of the complaint logically shape the scope of discovery." *United States ex rel. Jacobs v. CDS, P.A.*, No. 4:14-cv-00301-BLW, 2016 WL 4146077, at *2 (D. Idaho Aug. 3, 2016).

Nor have Plaintiffs sufficiently explained how knowing *who* reported a particular class member sheds light on their remaining procedural and substantive due process claims. They contend that the reasons reporters in fact had to believe a child was abused or neglected bear on these claims, and the Court agrees that they might—if, for example, reports rest on nothing more than a positive drug screen at delivery, that evidence would speak to the fit between the rule and its stated purpose. But that inquiry does not require reporters' names. The intake worksheets and related records compelled later in this decision will show what was reported and on what basis, and the Department will

---

[1] Plaintiffs concede that they do not allege a Fourth Amendment violation, but they argue that it "is one of the enumerated fundamental rights protected under the substantive due process, and it relates to privacy interest of the Class invaded by the Department." *See* Dkt. 138 at 11. In support of this statement, they cite to paragraphs 92 and 100 of the Second Amended Complaint. *Id.* at 11 n.30. But neither of these paragraphs even alludes to any privacy interests protected under the Fourth Amendment—an omission that runs contrary to the Supreme Court's mandate that the plaintiff provide a "careful description" of the asserted fundamental liberty interest she claims supports her substantive-due-process claim. *See Washington v. Glucksberg*, 521 U.S. 702, 722 (1997).

**MEMORANDUM DECISION AND ORDER - 6**

identify each reporter's position, relationship to the class member, and reporting entity or institution. That is the same balance the Court struck before class certification, *see* Dkt. 52 at 10–11, and Plaintiffs have not shown that more is needed now.

On this record, reporters' names are of marginal importance in resolving the issues that remain, and proportionality requires more. *See* Fed. R. Civ. P. 26(b)(1). The motion is denied without prejudice as to reporters' names. Accordingly, the Department shall respond to Interrogatory No. 22, subject to the terms of the protective order, except that it need not disclose class members' social security numbers or reporters' names. The Department shall identify each reporter's position, relationship to the class member, and reporting entity or institution, if known. If, however, producing the reporters' names unredacted would be less burdensome than identifying each reporter's position and relationship to the class member, the Department may do so in lieu of providing that information. Any risk of embarrassment or harassment to the reporting parties would be mitigated by the attorneys'-eyes-only protective order already in place.

A similar rationale applies to the redaction of social security numbers from any documents produced in answering this interrogatory pursuant to Federal Rule of Civil Procedure 33(d)—the Department may elect not to redact social security numbers if producing unredacted documents would be less burdensome. The concern, after all, is not class counsel's access to the numbers—documents produced under a protective order often contain sensitive identifiers—but their use, especially where locating class members would require sharing the numbers with third parties. *Natkin*, 2022 WL 19914189, at *5 (explaining that there are no guarantees in current times that personal

**MEMORANDUM DECISION AND ORDER - 7**

information will be protected once released to third parties). Given that risk, class counsel is not to use social security numbers to locate class members if the Department opts not to redact them.[2]

### B. The Class Member File Requests (Requests for Production Nos. 25, 26, 29, 30, 31, and 32)

These six requests seek the core documents from each class member's substantiation file: written communications between the Department and the class member regarding her alleged THC use or her presence on the Central Registry (Request for Production No. 25); administrative review, appeal, and judicial review records (Request for Production No. 26); intake worksheets and other documents reflecting reports of alleged prenatal THC use (Request for Production No. 29); the documents the Department considered in substantiating the class member (Request for Production No. 30); drug screening and testing records and the Department's related policies (Request for Production No. 31); and comprehensive safety assessments identifying class members (Request for Production No. 32). The Department's principal objection to each is undue burden.

Unlike the boilerplate objections courts routinely reject, the Department has supported its objection with evidence. *See A. Farber & Partners, Inc. v. Garber*, 234 F.R.D. 186, 188 (C.D. Cal. 2006) (stating that "general or boilerplate objections such as 'overly burdensome ...' are improper—especially when a party fails to submit any evidentiary declarations supporting such objections" and collecting cases with similar holdings). According to the Department, the class includes approximately 2,029 members

---

[2] The Court may entertain a renewed request *if* Plaintiffs can make a compelling showing that they cannot locate particular class members without them, and that locating those class members is critical to their case.

MEMORANDUM DECISION AND ORDER - 8

associated with 2,168 substantiations for prenatal THC use, roughly 8,020 comprehensive safety assessments, and nearly 9,700 intakes. *See* Dkt. 137-7 ¶¶ 4–6. The Department estimates that even a cursory review of every case file would take more than 1,000 hours, that a closer review involving redaction would take more than 6,000 hours, and that retrieving the 747 paper files predating 2019 from the Idaho State Historical Society would cost $5,976. *Id.* ¶¶ 9–10. The Court takes those figures seriously. Even so, three considerations persuade the Court that this discovery—narrowed as described below—is proportional to the needs of the case.

First, Plaintiffs' claims are not limited to a facial challenge. Plaintiffs allege that the Department's actual administration of IDAPA 16.06.01.563.02a—how reports are received, how substantiations are made, and what process class members receive—violates due process. A challenge of that kind cannot be resolved on the text of the rule alone; it turns on how the rule operates in practice, which is what these files would show. And contrary to the Department's argument, typicality does not require that every class member's substantiation be factually identical. *See Parsons v. Ryan*, 754 F.3d 657, 685 (9th Cir. 2014).

Second, the requests—as Plaintiffs have clarified them—are narrower than the Department's estimates assume. Plaintiffs seek a discrete, recurring set of documents, and they seek those documents only from each class member's own file—not from the separate files of fathers, children, or other involved individuals. The exemplar files already in the record confirm that this is a modest set of documents for each member. *See* Dkt. 13-2; Dkt. 124-4.

**MEMORANDUM DECISION AND ORDER - 9**

Third, and most important, the largest component of the Department's estimate—the more than 6,000 hours it attributes to a closer review involving redaction—rests on work the Department need not perform. Because disclosure is limited to counsel under the attorneys'-eyes-only protective order, a page-by-page privacy scrub is unnecessary; even redacting social security numbers is optional, as explained above. And Plaintiffs have offered to do the review themselves. If the Department lacks "the staff or the time" to review these files, class counsel represents that it "can perform that review pursuant to the protective order." *See* Dkt. 138 at 3. The Court takes Plaintiffs at their word. So rather than cull the discrete documents Plaintiffs seek from each file, the Department may produce each class member's file as it is maintained and leave the responsiveness review to class counsel, subject to the protective order. The 6,000-hour figure thus describes a burden this Order does not impose. What remains is closer to the Department's own lower-bound estimate—roughly 30 minutes per case to assemble each member's documents into a single folder—plus any limited redactions the Department elects to make. *See* Dkt. 137-7 ¶ 10. And even that estimate overstates the job, because the production ordered here excludes the 747 paper files altogether.

Nor do the Department's filing practices tip the proportionality balance in its favor, at least as to its electronically maintained files. The Department says its staff did not consistently follow naming conventions and that responsive documents may be scattered across related files. But its own declarant describes each class member's records as a single "file"—one that "includes the intake process, safety assessment process, [and] substantiation materials," among other components. *See* Dkt. 137-7 ¶ 7. Producing that

**MEMORANDUM DECISION AND ORDER - 10**

file is a far cry from the document-by-document reconstruction the Department's estimate assumes. And a party cannot use its own disorganized recordkeeping as a shield against otherwise proper discovery, nor is the prospect of a time-consuming production, standing alone, a reason to refuse it. *See, e.g.*, *Thomas v. Cate*, 715 F. Supp. 2d 1012, 1033–34 (E.D. Cal. 2010); *Pham v. Wal-Mart Stores, Inc.*, No. 2:11-CV-01148-KJD, 2011 WL 5508832, at *5 (D. Nev. Nov. 9, 2011). And given what a Central Registry listing means for the women on it—at least ten years on a child protection registry—the burden of pulling their files is not unreasonable in light of the benefits of the discovery. *See Thomas*, 715 F. Supp. 2d at 1032 ("Discovery should be allowed unless the hardship is unreasonable in light of the benefits to be secured from the discovery.").

The 747 paper files predating 2019 stand on different footing. The $5,976 retrieval fee is the least of it—that expense is simply one state agency paying another. The real burden lies in compiling identifying information for each file, transmitting it to the Idaho State Historical Society, and then sorting, extracting, scanning, and preparing hundreds of archived files for production. *See* Dkt. 137-7 ¶ 9. And the likely payoff at the other end is modest. The certified class consists of women currently appearing on the Central Registry, and women whom the Department will list in the future; the only relief available against the Director is prospective; and the merits will center on the process the Department has actually provided class members.

A woman substantiated in 2017 may well remain on the Registry today, so the paper files are not categorically irrelevant. But their marginal value does not justify compelling the most burdensome slice of the requested production. *See* Fed. R. Civ. P.

**MEMORANDUM DECISION AND ORDER - 11**

26(b)(1). The Court will therefore limit the compelled production to the files the Department maintains electronically—that is, files for cases with disposition dates on or after January 1, 2019. If Plaintiffs identify specific class members whose paper files bear on their claims, they may pursue a targeted request through the Court's discovery dispute procedures.

Accordingly, the Court grants the motion as to Requests for Production Nos. 25, 26, 29, 30, 31, and 32, with the following limitations. For each class member, the Department shall produce her own electronically maintained file—including the intake, comprehensive safety assessment, and substantiation materials, together with drug screening and testing records, substantiation and notice letters, and related communications with the class member. The Department need not produce the separate files of fathers, children, or other third parties, and need not produce Child Protective Act case files or termination-of-parental-rights materials, which Plaintiffs have disclaimed.

Before producing, the Department may—but need not—redact social security numbers and reporters' names, consistent with the Court's ruling on Interrogatory No. 22 above, and information identifying minor children; it need not otherwise review the files for responsiveness or privilege. Class counsel shall conduct the responsiveness review subject to the attorneys'-eyes-only protective order, and the parties shall proceed under a Federal Rule of Evidence 502(d) order so that production does not waive any privilege. The Department need not retrieve the pre-2019 paper files held by the Idaho State Historical Society; production is limited to electronically maintained files—that is, files for cases with disposition dates on or after January 1, 2019—as explained above.

MEMORANDUM DECISION AND ORDER - 12

Consistent with Plaintiffs' concession in their reply, Request for Production No. 26 is limited to administrative reviews, preliminary orders, final orders and dispositions, and adjudications arising from challenges to placement on the Central Registry. To the extent those records within the production period are held by the law firm the Department contracted with to conduct administrative reviews and appeals, they remain within the Department's control and must be obtained and produced. The Department shall also produce the policies, procedures, and guidelines requested in Request for Production No. 31.

Production shall proceed on a rolling basis and shall be complete within 45 days of the entry of this Order. Alternatively, the parties may agree to production of a representative sample of class member files in lieu of the full production ordered here. If they reach such an agreement, they shall file a stipulation identifying the sample's size, composition, and method of selection, together with any proposed adjustment to the production schedule, for the Court's approval.

### C. Request for Production No. 27

Request for Production No. 27, on the other hand, is overbroad on its face. It asks the Department to produce "all documents referencing either directly or indirectly any Class Member's placement on the Central Registry." The Court has already ordered production of the documents that matter—the substantiation file materials—and the marginal value of every document that "indirectly" references a class member's placement does not justify the open-ended search it would require. "District courts need not condone the use of discovery to engage in fishing expeditions." *Rivera v. NIBCO,*

**MEMORANDUM DECISION AND ORDER - 13**

364 F.3d 1057, 1072 (9th Cir. 2004) (cleaned up). The motion is denied as to Request for Production No. 27.

### D. Requests for Production Nos. 36, 37, and 38

Request for Production No. 36 seeks documents identifying any limits on the use of IDAPA 16.06.01.563.02a to women whose pregnancies result in a live birth. The Department responds that IDAPA 16.06.01 is the sole source of guidance on that question, yet simultaneously objects that searching for responsive documents would be unduly burdensome. The Department cannot have it both ways. If no policy or guidance documents exist, it costs the Department nothing to say so; if such documents do exist, they plainly bear on how the Department has chosen to apply the rule. And no file-by-file review is required—Department policy statements would not be squirreled away in individual case files. The motion is granted as to Request for Production No. 36. The Department shall produce any responsive policy or guidance documents or state definitively, in a supplemental response, that none exist.

Requests for Production Nos. 37 and 38 seek communications regarding any substantiation made while a class member was still pregnant, or where a pregnancy ended in something other than a live birth. The Director represents that she is unaware of any such instance. Mere distrust of that representation is not a basis to compel a file-by-file hunt for documents that may not exist. *See Schessler v. Bass*, No. 1:23-cv-01012-BAM (PC), 2025 WL 2207246, at *3 (E.D. Cal. Aug. 4, 2025). At the same time, the production ordered above will put the underlying substantiation documents in Plaintiffs' hands. If those documents reveal a substantiation of the sort described in Requests for

**MEMORANDUM DECISION AND ORDER - 14**

Production Nos. 37 and 38, Plaintiffs may renew their request after complying with their meet-and-confer obligations, as well as the Court's discovery dispute procedures. The motion is denied without prejudice as to Requests for Production Nos. 37 and 38.

### E.  Request for Production No. 33

Request for Production No. 33 seeks the Department's communications with hospitals, medical providers, and other persons or entities regarding the reporting of alleged prenatal THC use, including training, guidance, direction, and instruction. The request sweeps in two distinct categories of documents, and they warrant different treatment. The first—training materials, guidance, directives, and other policy-level communications about the reporting of prenatal THC use—bears directly on how class members come to the Department's attention and on how the substantiation process actually operates. That is relevant to Plaintiffs' remaining as-applied claims, and locating the material requires no file-by-file review of class member records. The second— communications concerning individual reports—is largely captured by the class member file production ordered above. The motion is therefore granted as to Request for Production No. 33, subject to the terms of the protective order, except that the Department may redact reporters' names from communications concerning individual reports, consistent with the Court's ruling on Interrogatory No. 22.

### F.  Request for Production No. 35

Request for Production No. 35 seeks all communications with non-class members—in practice, men—who appear on the Central Registry for substantiated THC use under IDAPA 16.06.01.563.02a. Plaintiffs argue that how the Department has applied

**MEMORANDUM DECISION AND ORDER - 15**

a "prenatal use" rule to men is relevant to their equal protection claim. *See Harrison v. Kernan*, 971 F.3d 1069, 1075–76 (9th Cir. 2020). But that claim has been dismissed with prejudice, and Plaintiffs identify no other live claim this discovery would meaningfully advance. Their passing suggestion that the material also bears on substantive due process does not persuade the Court—the rational basis inquiry concerns the fit between the rule and its asserted purpose, not the Department's treatment of a comparator group. *See* Dkt. 143 at 18–20. The motion is denied as to Request for Production No. 35.

### G. Requests for Production Nos. 28 and 34

These two requests concern what happens to class members once they are on the Central Registry. Request for Production No. 28 seeks documents relating to the Department's disclosure of class members' presence on the Registry—requests for information, consents, the Department's responses, related appeals, and the policies governing such disclosures. As the Court explained in its prior order, this information is relevant to Plaintiffs' procedural due process claim, which requires a showing that placement on the Registry results in the deprivation of a liberty interest. Dkt. 52 at 22–23 (citing *Humphries v. County of Los Angeles*, 554 F.3d 1170, 1186 (9th Cir. 2008)). Plaintiffs have clarified that they do not seek the contents of any criminal history or background check, and with that clarification the Department's reliance on 28 C.F.R. § 20.21 largely falls away.

To be clear, the Court is not requiring the Department to disclose criminal history record information that federal regulations shield from dissemination. The Department shall redact any such information from otherwise responsive documents, to the extent

**MEMORANDUM DECISION AND ORDER - 16**

required by federal law, and, if redaction is impracticable, may withhold the document—identifying it in a manner consistent with Rule 26(b)(5) without revealing the protected information itself. So limited, the burden is modest: the Department estimates roughly ten hours to cross-reference the Central Registry and about 160 hours to review and redact the records of the approximately 160 individuals involved. *See* Dkt. 137-6 ¶¶ 8–9. The motion is granted as to Request for Production No. 28, subject to those limitations and the protective order.

Request for Production No. 34 seeks documents relating to requests for removal from the Central Registry. As to class members—women currently listed under IDAPA 16.06.01.563.02a—their requests for removal and the Department's responses bear directly on the operation and duration of the deprivation Plaintiffs challenge, and those documents should reside in the class members' own files. The motion is granted as to class members' removal requests. As to individuals who have already been removed from the Registry, the Court agrees with the Department that the relevance is marginal and the privacy interests of those non-parties are significant. The motion is denied as to former registrants.

### H.  ESI Preservation

Finally, in a request tucked into the conclusion of their motion, Plaintiffs ask the Court to adopt their proposed ESI preservation protocol from the parties' joint discovery plan. *See* Dkt. 123. The dispute is one of scope. The Department would confine preservation to the substantiation case files of women listed on the Central Registry under IDAPA 16.06.01.563.02a. Plaintiffs would sweep more broadly, reaching all ESI

**MEMORANDUM DECISION AND ORDER - 17**

concerning class members and the Central Registry wherever it resides, together with the relevant records of the Director and her predecessors, deposed witnesses, and the Department's ESI custodians and their successors. *See* Dkt. 123 at 1–3, 6–7.

The Department's duty to preserve does not depend on a court order; it arose as a matter of common law once litigation was reasonably anticipated, *see* Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment; *Apple Inc. v. Samsung Elecs. Co.*, 888 F. Supp. 2d 976, 991 (N.D. Cal. 2012), and this litigation has been pending—not merely anticipated—for more than three years. But the duty is not boundless: it reaches evidence relevant to the claims and defenses actually in the case, tempered by the same proportionality principles that govern discovery itself. *See* Fed. R. Civ. P. 26(b)(1).

Measured against those principles, the Department's proposal is too narrow, and Plaintiffs' is too broad. Confining preservation to substantiation case files would not even cover the discovery the Court now compels. Plaintiffs' protocol overshoots in the other direction. Its catch-all—ESI "otherwise relating to Class Members appearing on the Central Registry"—is a preservation-side cousin of Request for Production No. 27, which the Court has already declined to compel as overbroad, and the Court will not require the Department to preserve in perpetuity what it need not produce.

The sensible course is to align preservation with the discovery the Court has actually ordered or left open. The Department shall preserve ESI created on or after January 1, 2008—wherever it is maintained, and whether or not it resides in a substantiation case file—relating to: (1) the substantiation and listing of class members under IDAPA 16.06.01.563.02a, including intake, safety assessment, substantiation, drug

MEMORANDUM DECISION AND ORDER - 18

screening and testing, administrative review, appeal, and removal materials; (2)

communications between the Department and class members concerning alleged prenatal

THC use or presence on the Central Registry; (3) requests for, consents to, and releases

or disclosures of Central Registry information about class members; and (4) policies,

procedures, guidance, training materials, and directives concerning the reporting and

substantiation of prenatal THC use. And because the certified class includes women

whom the Department will substantiate and list in the future, this obligation is ongoing—

it does not end on any fixed date.

The preservation obligation also extends to the relevant records of the Director and

her predecessors during this litigation, witnesses who have been deposed, and the ESI

custodians identified in the joint discovery plan—and, as personnel come and go, to their

successors. In all other respects, the proportionality limits the parties have already agreed

upon—including the eight-key-custodian limit and the exclusion of sources that are not

reasonably accessible without undue burden or cost—remain in place. To be clear, the

Court makes no finding that the Department has fallen short of its preservation

obligations to date; this ruling simply eliminates any confusion going forward.

## I.  Extension of Discovery Deadlines

That leaves the Plaintiff Class's motion to extend the deadline for serving written

discovery. *See* Dkt. 139. Plaintiffs ask that, if the Court grants the second motion to

compel in whole or in part, the deadline for serving written discovery be extended to a

date 21 days after the Department serves the court-ordered responses and production, so

that they may serve any narrowly focused follow-up written discovery. The Department

**MEMORANDUM DECISION AND ORDER - 19**

opposes any extension, arguing that Plaintiffs have known the substance of its objections since March 6, 2026, and could have served revised requests before the deadline ran.

A scheduling order "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). Good cause turns primarily on the diligence of the party seeking the modification. *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992). The Court need not resolve the parties' dispute over diligence, because the request is premature. Whether Plaintiffs will need additional written discovery—and what it would cover—cannot be known until they have reviewed the Department's production. Plaintiffs say as much: until they receive the Department's responses, they "cannot know" whether any follow-up discovery will be required. Dkt. 139-1 at 4.

The written discovery deadline will therefore not be extended. If, after reviewing the Department's production, Plaintiffs determine that they need additional written discovery, they may renew their request within 21 days after the Department completes the production ordered above. Before doing so, Plaintiffs must meet and confer with the Department, and any renewed request must proceed through the Court's informal discovery dispute procedures. *See* Dkt. 117 ¶ 7. Any renewed request should be targeted at gaps the production reveals.

## ORDER

**IT IS ORDERED that:**

1. Plaintiffs' Second Motion to Compel (Dkt. 134) is **GRANTED IN PART and DENIED IN PART**, as follows:

MEMORANDUM DECISION AND ORDER - 20

a.  The motion is granted in part with respect to Interrogatory No. 22. The Department shall respond to Interrogatory No. 22, subject to the terms of the protective order, within 45 days of the entry of this Order, except that it need not disclose class members' social security numbers or reporters' names. In lieu of names, the Department shall identify each reporter's position, relationship to the class member, and reporting entity or institution, if known. If producing reporters' names unredacted would be less burdensome, the Department may do so instead.

b.  The motion is granted with respect to Requests for Production Nos. 25, 26, 29, 30, 31, and 32, as limited by this Order. The Department shall produce each class member's electronically maintained file, as set forth above, on a rolling basis, with production complete within 45 days of the entry of this Order. Production is subject to the protective order (Dkts. 55, 56, and 98). The Department may—but need not—redact social security numbers, reporters' names, and information identifying minors; it need not otherwise review the files for responsiveness or privilege. Class counsel shall not use social security numbers to locate class members absent further order of the Court. Class counsel shall conduct the responsiveness review subject to the protective order, and the parties shall proceed under a Federal Rule of Evidence 502(d) order so that production does not waive any privilege or protection. Alternatively, the parties may agree to production of a representative sample of class member files in lieu of the full production

**MEMORANDUM DECISION AND ORDER - 21**

ordered here. If they reach such an agreement, they shall file a stipulation identifying the sample's size, composition, and method of selection, together with any proposed adjustment to the production schedule, for the Court's approval.

c.  The motion is granted with respect to Requests for Production Nos. 28, 33, and 36, subject to the limitations described in this Order and the terms of the protective order.

d.  The motion is granted in part with respect to Request for Production No. 34. The Department shall produce documents relating to class members' requests for removal from the Central Registry. The motion is otherwise denied with respect to Request for Production No. 34 and is denied with respect to Request for Production No. 35.

e.  The motion is denied with respect to Request for Production No. 27 and denied without prejudice with respect to Requests for Production Nos. 37 and 38.

f.  The motion is granted in part with respect to Plaintiffs' request for an order confirming the Department's ESI preservation obligations. The Department shall preserve ESI on an ongoing basis in accordance with the scope described in this Order. The motion is otherwise denied with respect to Plaintiffs' proposed preservation protocol.

2.  Plaintiffs' Motion for Limited Extension of Time for Completion of Discovery (Dkt. 139) is **DENIED without prejudice**. The deadline for serving written

MEMORANDUM DECISION AND ORDER - 22

discovery is not extended. If, after reviewing the Department's production,

Plaintiffs determine that they need additional written discovery, they may renew

their request within 21 days after the Department completes the production

ordered by this decision. Any renewed request must be preceded by a meet and

confer with the Department and must proceed through the Court's informal

discovery dispute procedures.

DATED: July 14, 2026

B. Lynn Winmill
U.S. District Court Judge

**MEMORANDUM DECISION AND ORDER - 23**